Argued and submitted September 8, 2005, decision of Court of Appeals affirmed April 13, 2006

CONRAD ENGWEILER,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A108469; SC S52165)

133 P3d 910

Andy Simrin, Salem, argued the cause and filed the brief for petitioner on review.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson,** Chief Justice, and Gillette, Durham, Riggs, De Muniz,*** Balmer, and Kistler, Justices.

** Chief Justice when case was argued.

*** Chief Justice when decision was issued.

GILLETTE, J.

## GILLETTE, J.

This is one of two related cases, both decided this date, involving the life sentence that petitioner is serving. The dispositive issue in this case is whether a 1999 order of the Board of Parole and Post-Prison Supervision (the board) relating to that sentence that set both a "prison term" and a "murder review date" for petitioner was subject to judicial review under ORS 144.335 (1999), *amended by* Oregon Laws 2001, chapter 661, section 1; Oregon Laws 2003, chapter 352, section 1. The Court of Appeals ultimately concluded that it was not and, accordingly, dismissed petitioner's petition for judicial review. *Engweiler v. Board of Parole*, 197 Or App 43, 103 P3d 1201 (2005) (*Engweiler IV*). We allowed review and now affirm the decision of the Court of Appeals.

In 1990, when petitioner was 15 years old, he raped, sodomized, and killed a 16-year-old female acquaintance. The juvenile court remanded petitioner to the adult court, where he was tried and convicted of aggravated murder, among other things. The trial court initially imposed a life sentence with a 30-year mandatory minimum term of imprisonment under ORS 163.105(1)(c) (1989), *amended by* Oregon Laws 1991, chapter 126, section 8; Oregon Laws 1995, chapter 421, section 2; Oregon Laws 1999, chapter 59, section 31; and Oregon Laws 1999, chapter 782, section 5. On appeal, the Court of Appeals vacated that sentence because another statute, ORS 161.620 (1989), *amended by* Oregon Laws 1993, chapter 33, section 306; Oregon Laws 1993, chapter 546, section 119; Oregon Laws 1995, chapter 422, section 131y; and Oregon Laws 1999, chapter 951, section 2, prohibited the trial court from imposing a mandatory minimum sentence on any person remanded from the juvenile court who had been under the age of 17 when the person committed the crime for which the person was remanded. *See State v. Engweiler*, 118 Or App 132, 846 P2d 1163 (1993) (*Engweiler I*) (so holding). On remand, the trial court, in November 1994, imposed an indeterminate sentence of life imprisonment. Under such a sentence, petitioner was eligible for parole at some future date.

In June 1999, the board held a "prison term hearing," at the conclusion of which it issued Board Action Form

(BAF) #1. In BAF #1, the board established a 480-month "prison term" for petitioner under a prison term matrix that it had established in May 1999 to deal specifically with juveniles who had been convicted of aggravated murder and sentenced to life imprisonment. BAF #1 also set a "murder review date" of February 22, 2030, and provided that a "murder review hearing" would be scheduled in December 2029.

After unsuccessfully pursuing administrative review of BAF #1, petitioner sought judicial review in the Court of Appeals. In that court, petitioner argued, among other things, that, in applying the 1999 matrix to set a 480-month "prison term," the board effectively had imposed on him a harsher penalty than would have been imposed on him at the time that he was convicted, even had he been an adult. Doing so, petitioner asserted, violated his state and federal constitutional right not to be subject to *ex post facto* laws under Article I, section 21, of the Oregon Constitution and Article I, section 10, of the United States Constitution. He also argued that doing so violated his rights under the Oregon privileges and immunities clause, set out in Article I, section 20, of the Oregon Constitution, the federal Equal Protection Clause set out in the Fourteenth Amendment to the United States Constitution, and the cruel and unusual punishments clause set out in Article I, section 16, of the Oregon Constitution.

The board moved to dismiss judicial review on the ground that BAF #1 was unreviewable under ORS 144.335 (1999) (set out *post*), the statute that then governed review of final board orders dealing with parole. That statute generally eliminated judicial review of any order relating to a release date or a parole consideration hearing date, save for a subcategory of challenges to orders setting initial release dates in which a petitioner challenged the crime severity rating, criminal history score, or aggravation factors that the board had used to set that initial release date.

The Court of Appeals initially concluded that, because BAF #1 set a "prison term" and thereby guaranteed petitioner's parole *eligibility* on a certain date, and because petitioner's objection to the board's use of the matrix to set his prison term essentially was a challenge to the crime severity

rating, criminal history score, or aggravation factors that the board had used, petitioner's challenge to BAF #1 was subject to judicial review under ORS 144.335 (1999). Accordingly, the Court of Appeals denied the board's motion to dismiss the petition for judicial review. *Engweiler v. Board of Parole*, 170 Or App 653, 13 P3d 1009 (2000) (*Engweiler II*).

The Court of Appeals' review proceeded; both sides filed briefs, the case was argued, and the Court of Appeals took the matter under advisement. In January 2005, however, the Court of Appeals, on its own motion, reconsidered its earlier decision respecting jurisdiction and determined that its denial of the board's motion to dismiss had been incorrect. Upon further consideration of BAF #1, together with an examination of the board's administrative rules, the court concluded that the board actually had not set an initial release date for petitioner, either when it set the 480-month "prison term" or when it set the February 22, 2030, "murder review date." *Engweiler IV*, 197 Or App at 47-50. It followed, in the Court of Appeals' view, that BAF #1 was not reviewable. *Id.* at 50. The court therefore granted the board's motion to dismiss judicial review. *Id.* at 51. We allowed petitioner's petition for review to address the question whether an order like BAF #1 that is issued to a prisoner in petitioner's circumstances is subject to judicial review.

Both parties appear to agree that, in 1999, when the board issued BAF #1, ORS 144.335 (1999) governed the availability of judicial review of board orders.[1] That statute provided, in part:

"(1)  When a person over whom the State Board of Parole and Post-Prison Supervision exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole, * * * such person is entitled to judicial review of the final order.

"* * * * *

---

[1] ORS 144.335 continues today to govern the availability of judicial review but the statute was significantly modified in 2001 to broaden the types of orders subject to judicial review. Or Laws 2001, ch 661, § 1.

"(3)   Notwithstanding subsection (1) of this section, *the board's order is final and not subject to judicial review when the board makes any decision relating to a release date or a parole consideration hearing date, including*:

"(a)   *Setting an initial release date under ORS 144.120, except* that the setting of an initial release date under ORS 144.120 remains subject to judicial review if the prisoner contests the crime severity rating, the history risk score or aggravation factors found by the board under the rules of the board."

(Emphasis added.)

We emphasize at the outset the narrow scope of our inquiry in this case. The sole issue before us is whether BAF #1 was reviewable by the Court of Appeals under ordinary judicial review procedures pursuant to ORS 144.335 (1999). If it was not, this case is at an end. But such a holding, even if correct, would not necessarily mean that petitioner would be unable to vindicate any legal rights that he may have had vis-à-vis BAF #1. *See, e.g., State ex rel Engweiler v. Cook,* 340 Or 373, 133 P3d 904 (2006) (illustrating availability of other forms of judicial scrutiny).[2]

We begin our analysis with the text of ORS 144.335 (1999). By its express terms, section (1) of that statute limited the availability of judicial review to final board orders "related to the granting, revoking or discharging of parole." Strictly speaking, BAF #1, which set petitioner's "prison term" and a "murder review date," was not such an order: It did not, by its terms, grant, revoke, or discharge petitioner on parole. Arguably, then, BAF #1 was not subject to review under ORS 144.335 (1999).

It is true that BAF #1 *indirectly* "related" to the granting of parole, at least to the extent that *any* order that somehow touched on any matter, circumstance, or condition that could be considered in connection with a prisoner's eventual eligibility for parole was an order "related" to the granting of parole. However, this case does not require us to determine the specific scope of that "related to" clause in ORS

---

[2] In *State ex rel Engweiler v. Cook,* we affirm the Court of Appeals' decision in *State ex rel Engweiler v. Cook,* 197 Or App 32, 103 P3d 1205 (*Engweiler III*).

144.335 (1999) because, to the extent that BAF #1 can be said to be "related" to the granting of parole, it falls squarely within the category of orders "relating to a release date or a parole consideration hearing date" that *expressly* was excluded from review by ORS 144.335(3) (1999). Thus, by its text read in context, ORS 144.335(3) (1999) appears to be the complete answer to petitioner's effort to raise certain issues through the vehicle of judicial review of BAF #1.

Petitioner argues that, notwithstanding the broad exclusion from judicial review set out in ORS 144.335(3) (1999), BAF #1 is reviewable because it fell within a sub-category of orders that remained subject to judicial review, *viz.*, those orders "setting an initial release date under ORS 144.120 * * * if the prisoner contests the crime severity rating, the history risk score or aggravation factors found by the board under the rules of the board." ORS 144.335(3)(a) (1999). As noted, the Court of Appeals concluded, after an extensive review of the board's rules, that that statutory provision was inapplicable because BAF #1 did not set an initial release date. *Engweiler IV*, 197 Or App at 50. We turn to that issue.[3]

Examining the question whether the board in BAF #1 "set an initial release date under ORS 144.120," as that phrase is used in ORS 144.335(3)(a) (1999), requires us to consider both the history of petitioner's incarceration and the evolution of certain statutes since petitioner committed his crime. In 1990, when petitioner committed his crime, ORS 144.120 (1989) provided, in part:

"(1)(a)   Within six months of the admission of a prisoner to any Department of Corrections institution, with the exception of those prisoners sentenced to a term of imprisonment for life or for more than five years, the board shall conduct a parole hearing to interview the prisoner and set the initial date of release on parole pursuant to subsection (2) of this section. For those prisoners sentenced to a term of

_____

[3] Of course, even were we to disagree with the Court of Appeals on this issue, the question would remain whether petitioner actually contested "the crime severity rating, the history risk score or aggravation factors found by the board." However, because, for the reasons set out in the text below, we agree with the Court of Appeals' view on the "initial release date" issue, we need not address the other question.

imprisonment for more than five years but less than 15 years, the board shall conduct the parole hearing and set the initial date of release within eight months following admission of the prisoner to the institution. *For those prisoners sentenced to a term of imprisonment for life or for 15 years or more, the board shall conduct the parole hearing, and shall set the initial release date, within one year following admission of the prisoner to the institution.* Release shall be contingent upon satisfaction of the requirements of ORS 144.125."

(Emphasis added.) The emphasized part of the statute notwithstanding, petitioner never received the parole hearing contemplated by the statute, possibly because his initial sentence was on appeal in what eventually would lead to the Court of Appeals decision in *Engweiler I*.

By 1994, when petitioner was resentenced after remand, ORS 144.120(1)(a) had been amended by 1991 Oregon Laws, chapter 126, section 6, to exclude from the emphasized parole hearing requirement those individuals who had been sentenced for aggravated murder.[4] After that amendment, ORS 144.120(1)(a) (1993) provided, in part:

"Within six months of the admission of a prisoner to any Department of Corrections instruction, with the exception of those prisoners sentenced to a term of imprisonment for life or for more than five years, the [board] shall conduct a parole hearing to * * * set the [prisoner's] initial date of release on parole(.) * * * For those prisoners sentenced to a term of imprisonment for life or for 15 years or more, *with the exception of those sentenced for aggravated murder*, the board shall conduct the parole hearing, and shall set the initial release date, within one year following admission of the prisoner to the institution."

(Emphasis added.) Under that version of ORS 144.120(1)(a), which continues in effect unchanged in any pertinent respect today, the board was not required to set an initial release date for prisoners who, like petitioner, had been sentenced for aggravated murder.[5] Still another statute, ORS

---

[4] ORS 144.120 has been amended on several additional occasions over the years. Or Laws 1993, ch 294, § 5; Or Laws 1999, ch 782, § 3; Or Laws 2001, ch 104, § 48.

[5] In *Engweiler II*, the Court of Appeals assumed for purposes of its decision there that the board in BAF #1 had set an "initial release date" under ORS 144.120.

163.105(1)(c) and (2) (1989), made certain prisoners who had been convicted of aggravated murder *as adults* eligible for parole after 30 years and directed the board to conduct a rehabilitation hearing for such prisoners after 20 years but, after 1991, no similar statute required the board to set an initial release date for persons like petitioner.

Petitioner has contended, and the board concedes for purposes of argument here, that the version of ORS 144.120 that was in effect when petitioner committed his crimes—ORS 144.120 (1989)—is the version that applies in this case. In so contending and conceding, however, neither party has explained why it necessarily is the case that a procedural statute such as ORS 144.120, which does not increase petitioner's punishment in any way, would continue to apply after it was changed by the legislature. We need not decide that issue, however, because it is undisputed that, notwithstanding the statute's mandatory wording, the board did not conduct a parole hearing under ORS 144.120(1)(a) (1989) for petitioner within one year following his admission to prison.

Instead of receiving a parole hearing during the year following his admission to prison, when the board was required under ORS 144.120(1)(a) (1989) to conduct it, petitioner was serving an unlawful mandatory minimum sentence and was actively pursuing an appeal. His initial misfortune, it could be argued, lay in winning that appeal. As noted, by the time that the sentencing court resentenced him on remand in 1994, ORS 144.120 had been amended to exclude those prisoners serving sentences for aggravated murder from the hearing requirement. We express no opinion whether either or both of those factors obviated the necessity for the board to conduct the hearing contemplated by the 1989 version of the statute. However, to the extent that petitioner had (or continues to have) a right to enforce the board's obligation under ORS 144.120(1)(a) (1989) to conduct a

*Engweiler II*, 170 Or App at 657-58. It made that assumption because the board had stated in its response to petitioner's request for judicial review that the Department of Justice had advised it in 1994 that " 'the Board had the authority to conduct a hearing and set *an initial release date* pursuant to ORS 144.120 for juveniles convicted of aggravated murder.' " *Engweiler II*, 170 Or App at 657 (emphasis in original). However, the board never conceded that it in fact *had* set an initial release date for petitioner in BAF #1, and nothing in BAF #1 can be construed as doing so expressly.

parole hearing and to set an initial release date, this proceeding is not the way to do it. The proper avenue for vindicating that right is to seek a writ of mandamus or, if the facts otherwise justify it, a writ of habeas corpus.

Petitioner suggests, without arguing directly, that, even after the legislature amended ORS 144.120(1)(a) in 1991 to exclude from the mandatory parole hearing requirements those prisoners who had been sentenced for aggravated murder, the board still was required to conduct a parole hearing for *juveniles* sentenced for aggravated murder, because those particular convicted persons remained eligible for parole. If the board simply were to decline to conduct a parole hearing, petitioner argues, the board effectively would violate ORS 161.620 (1989), which prohibited the imposition on certain juveniles of either sentences of life without the possibility of parole or mandatory minimum sentences. Petitioner concedes that the 1991 amendment did not establish a time frame for conducting any such hearings. In that connection, petitioner assumes that the "prison term hearing" that the board conducted in 1999 in his case essentially amounted to the "parole hearing" that the board was required to conduct under ORS 144.120(1)(a).[6] Importantly, however, petitioner stops short of arguing that, after the legislature amended it in 1991, ORS 144.120(1)(a) still required the board to set an initial release date at the parole hearing. Instead, petitioner argues that, in setting a 480-month "prison term," the board implicitly and necessarily did set such an initial release date. As petitioner argues, "[t]o be didactic, after an inmate finishes his 'prison term' by completing his 'time to be served,' he is released from physical custody." Therefore, according to petitioner, an initial release date, "*de facto*, is the tail end of the 'prison term.' "

There are two problems with that argument. First, we are not satisfied that the "prison term hearing" that the board conducted in 1999 in fact was a "parole hearing" under ORS 144.120(1)(a) (1989) or (1993). The mere fact that no statute appears expressly to authorize the board to conduct

---

[6] He then goes on to assert that he does not object to the board's timing in this appeal.

"prison term hearings" does not lead inexorably to the conclusion that the board's only authority to conduct that hearing arose out of ORS 144.120. In fact, the board purported to conduct the 1999 prison term hearing not under the authority of ORS 144.120 but, instead, pursuant to regulations that it had adopted earlier that year, on the recommendation of the Attorney General and under the board's rulemaking authority in ORS 144.140(1) (board has authority to "adopt rules to carry out its responsibilities under the sentencing guidelines").

Second, the board not only did not itself purport to "set" an initial release date under ORS 144.120 in BAF #1, it does not appear on this record that the board took an important step that ORS 144.120 required it to take in the event that it did set an initial parole release date, *viz.*, inform the sentencing court of the date. ORS 144.120(6). Instead, the wording of BAF #1 provided only that the "board will conduct a progress review" pursuant to administrative rules in February 2025 and that the board will schedule a "murder review hearing" in December 2029. Such wording necessarily contemplates further review before an initial parole release date would be set. The Court of Appeals thus was correct when it held that the board's actions established a date for further parole review, but did not establish a date on which petitioner was to be released on parole. *See Engweiler IV*, 197 Or App at 50 (so holding). It follows that BAF #1 was not an order "setting * * * an initial release date under ORS 144.120." Petitioner therefore cannot successfully argue that the order was one subject to judicial review under ORS 144.335(3)(a) (1999), whether or not he wished to contest the "crime severity rating, the history risk score or aggravation factors found by the board."

Petitioner argues in the alternative that, to the extent that BAF #1 was not an order setting an initial release date, then it was not one "relating to a release date" at all. It was, rather, "an order that established when the Board would weigh in on whether Petitioner had transformed himself into a parole eligible candidate" (petitioner's own description). As such the petitioner argues the exclusion from judicial review set out ORS 144.335(3) would not apply. As discussed above, however, ORS 144.335(3) (1999) excludes

from judicial review "any decision relating to * * * *a parole consideration hearing date.*" (Emphasis added.) The date that the board would "weigh in on whether petitioner had transformed himself into a parole eligible candidate" inescapably is a "parole consideration hearing date." It follows that the order is not subject to judicial review, even under petitioner's alternative view of the effect of BAF #1.

Based on the foregoing analysis, we conclude that petitioner has no right to judicial review of BAF #1 pursuant to ORS 144.335 (1999). The Court of Appeals was correct in so holding.

The decision of the Court of Appeals is affirmed.