Argued and submitted March 12, 2003, affirmed January 12, petition for review allowed May 24, 2005 (338 Or 583)

STATE ex rel Conrad R. ENGWEILER,
*Appellant,*

*v.*

David COOK,
Director of the Oregon Department of Corrections,
and Charles Kliewer,
Administrator of the Offender Information and
Sentence Agency of the Oregon Department of Corrections,
*Respondents.*

01C19211; A117264

103 P3d 1205

Andy Simrin argued the cause and filed the supplemental brief for appellant. Conrad R. Engweiler filed the opening brief *pro se*.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Linder, Judge.

LINDER, J.

## LINDER, J.

Plaintiff-relator (relator), who is serving a life sentence for aggravated murder, petitioned the circuit court for a writ of mandamus seeking to compel the Department of Corrections (DOC) to grant him earned time credit pursuant to ORS 421.121. The circuit court dismissed the writ after concluding that the statute does not apply to inmates serving life sentences, and relator appeals. We review for errors of law, ORS 34.240, and affirm.

Relator committed aggravated murder in 1990, when he was 15 years old. He was remanded to adult court, convicted, and sentenced to life in prison.[1] Whether relator will remain incarcerated for life, or will be released at some point on parole, depends on decisions to be made by the Board of Parole and Post-Prison Supervision (board). *See* Or Laws 1989, ch 790, § 28 (the statutes providing for parole of incarcerated inmates apply to, among others, "offenders convicted of aggravated murder regardless of the date of the crime"). In 1999, after a hearing, the board established a 480-month "prison term" for relator. Consistently with the board's rules that apply to persons convicted of aggravated murder, the board did not set a parole release date as a result of the hearing.[2] Instead, the board gave relator a "review date" of February 22, 2030. Under the board's rules, that review date will trigger a "progress review" five years before the designated date arrives; in that progress review, the board will assess relator's institutional conduct and rehabilitation efforts since the original prison term hearing. *See* OAR 255-032-0011(6). The board will not determine a parole

---

[1] Relator originally was sentenced to life imprisonment with a 30-year minimum sentence. On direct appeal in his criminal case, we remanded for resentencing, holding that the mandatory minimum sentence for aggravated murder cannot be imposed on a juvenile who was under the age of 17 at the time of the crime. *State v. Engweiler*, 118 Or App 132, 846 P2d 1163, *rev den*, 317 Or 486 (1993). On remand, the trial court imposed a sentence of life imprisonment, without any mandatory minimum sentence.

[2] *See* OAR 255-032-0005(1) (adults convicted of aggravated murder who have a life sentence that permits possible future parole will receive a prison term hearing at which the board shall set a "review date" rather than a "parole release date"); OAR 255-032-0005(4) (juveniles convicted of aggravated murder who were under age 17 when the crime was committed shall receive a prison term hearing at which the board shall set "a review date" rather than a projected "parole release date").

release date or set future review dates for relator until after the currently set review date in February 2030. *See Engweiler v. Board of Parole*, 197 Or App 43, 103 P3d 1201 (2005) (so concluding based on OAR 255-032-0011(7)).

After relator received the board order setting his 480-month prison term and establishing a review date of February 2030, he wrote to DOC asking it to reduce his 480-month prison term by crediting him for earned time. DOC staff responded by advising relator that DOC "does not calculate the release date" on his life sentence for aggravated murder. Rather, "that date will be determined by the [board]." DOC invited relator to address his concerns about his entitlement to earned time credit to the board. Relator responded by seeking a writ of mandamus from the circuit court directing DOC to reduce his 480-month prison term based on earned time credit. The court dismissed the writ.

On appeal, the parties renew the arguments they made below. Relator asserts that, under the express terms of ORS 421.121, all inmates who commit their crimes on or after November 1, 1989, when Oregon's sentencing guidelines system went into effect, are entitled to have their incarcerative term reduced based on their earned time credits. Relator insists that no exception exists for inmates serving life sentences for aggravated murder. In response, DOC argues that the statute applies only to the term of incarceration imposed by a sentencing court, not to the term of actual prison time served as determined by a parole decision. As we explain below, we agree with DOC's argument in that regard.[3]

The starting point is the text of ORS 421.121, which provides for so-called "earned time credits" against an inmate's incarcerative term if the inmate behaves appropriately while in prison. Subsection (1) of the statute provides:

> "Except as provided in ORS 137.635 [concerning certain repeat offenders], each inmate sentenced to the custody of the Department of Corrections for felonies committed on or

---

[3] DOC further argues that ORS 421.121 applies only to *determinate* sentences imposed on or after November 1, 1989, rather than to *indeterminate* life sentences for aggravated murder. As we later explain, we need not reach that issue in this case.

after November 1, 1989, shall be eligible for a reduction in the term of incarceration for appropriate institutional behavior, as defined by rule of the Department of Corrections, and for participation in the functional literacy program described in ORS 421.084."

The next two subsections specify that the maximum amount of earned time credit that an inmate may receive is "20 percent of the total term of incarceration" and that earned time credit cannot be applied to shorten "the term of actual prison confinement to less than six months." ORS 421.121(2), (3). The final subsection requires DOC to adopt rules "to establish a process for granting, retracting and restoring the time credits earned by the offender as allowed" by the statute. ORS 421.121(4).

Relying on the text of subsection (1), relator urges that the statute unambiguously applies to him because it applies to all inmates sentenced to DOC, for a felony, on or after November 1, 1989. Relator, having committed aggravated murder in 1990, falls within that general description. Relator acknowledges that it would be a practical impossibility to reduce his term of life imprisonment—*i.e.*, "no mortal can predict with precision the length of his life." But because the board has now set a 480-month "prison term" for him, relator maintains that DOC is obligated to apply earned time credit to that board-imposed term.

The pivotal question, then, is the meaning of "term of incarceration" in ORS 421.121(1). In particular, does "term of incarceration" refer to the term of incarceration that a sentencing court imposes for a felony committed on or after November 1, 1989? Or does it refer to, or otherwise include, the period of incarceration established by parole board decisions? Relator is correct that he falls within the general class of persons described by the statute—*i.e.*, inmates who committed a felony on or after November 1, 1989—and that the statute does not expressly exempt inmates convicted of aggravated murder and sentenced to life imprisonment. *Compare* ORS 421.121 *with* ORS 421.120 (providing for "good time" sentence reductions for crimes committed before November 1, 1989, and expressly exempting life sentences). But that does not answer what the statute requires of DOC

for someone who, like relator, is serving a sentence of life imprisonment. Again, the text of the statute plainly provides that earned time credits are applied to reduce an inmate's "term of incarceration." We therefore must determine the meaning of "term of incarceration" to know whether or how earned time credits apply in relator's case.

ORS 421.121 does not define "term of incarceration." But in determining the meaning of the term, we can look to context, which includes related statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 612, 859 P2d 1143 (1993). Here, context includes the various statutes that relate to sentencing and parole more generally. Those statutes contain frequent references to "term of incarceration" and "term of imprisonment." Indeed, the references are too numerous for citation. We have, however, extensively reviewed the legislature's use of those terms in the various statutes relating to sentencing and parole. Two general observations follow from that review.

First, as used by the legislature, "term of incarceration" and "term of imprisonment" are synonymous. For example, ORS 137.010 describes the general duty of the court to pronounce sentence in a criminal case, and states that the court shall impose, in appropriate circumstances, a "term of imprisonment." A related statute, ORS 137.124, requires the court to commit a felony offender to the custody of DOC when the court's sentence includes a "term of incarceration" that exceeds 12 months. Other statutes pertaining to sentencing and parole similarly use "term of incarceration" and "term of imprisonment" interchangeably.[4]

Our second general observation from our review of the sentencing and parole statutes is that, when the legislature uses "term of incarceration" or "term of imprisonment," the phrases typically refer to one of two closely related concepts: (1) the amount of prison time that a *sentencing court is*

---

[4] *See, e.g.*, ORS 137.121 (pertaining to maximum consecutive "terms of imprisonment"); ORS 137.123(5) (authorizing court to impose consecutive "terms of imprisonment" for separate convictions); ORS 137.700 (requiring imposition of mandatory "terms of imprisonment" without release eligibility for specified offenses); ORS 137.717 (establishing presumptive "terms of incarceration" for specified offenses).

*authorized* to impose for a particular offense; or (2) the amount of prison time that a *sentencing court actually imposes* as part of a sentence for a particular offender.[5] When the legislature intends, instead, to refer to the amount of time actually served in prison, as a result of parole or other release decisions, it typically expresses that intent directly, either by using qualifying language or by using different language entirely.[6] Importantly, however, despite some variation in the legislature's use of the phrases "term of incarceration" and "term of imprisonment," there is one context in which the legislature does *not* use those phrases—namely, to describe the board's parole authority. Although the board, by rule, sets what it refers to as a "prison term" based on an individual's matrix score, the legislature consistently refers to the board's function as one of determining an inmate's "duration of imprisonment."[7]

Thus, the context provided by the sentencing and parole statutes as a whole strongly suggests that the reference in ORS 421.121(1) to "term of incarceration" means the incarcerative term *authorized or imposed by the court* as a part of an offender's sentence, not the length of prison time that an inmate may actually serve based on parole board decisions. Any doubt as to that conclusion, moreover, is eliminated by considering ORS 421.121 in light of another aspect of its context *i.e.*, the contemporaneous enactment of which it was a part. *See State ex rel Osborne v. Cook*, 185 Or App 317,

---

[5] The board also has quasi-sentencing authority. Similarly to a trial court's authority in a criminal case, the board is authorized to impose a "term of incarceration" after a hearing as a "sanction" for a post-prison supervision violation. *See* ORS 144.108(3), (4). Board-imposed terms of incarceration are expressly exempted from the earned time credit provisions, ORS 144.108(3)(a), a fact that, as we later discuss, reinforces our conclusion as to the meaning of "term of incarceration" in ORS 421.121(1).

[6] *See, e.g.*, ORS 144.103 (method for setting length of post-prison supervision takes into account the "term of imprisonment *served*" as well as the maximum authorized "term of imprisonment" (emphasis added)); ORS 144.785 (distinguishing between "duration of the actual imprisonment" served by an offender who is released on parole and the maximum "term of imprisonment" fixed by statute for the crime of conviction).

[7] ORS 144.780(1) (requiring board to establish ranges for "duration of imprisonment to be served"); *see also* ORS 144.079; ORS 144.775(7); ORS 144.783; ORS 144.785.

323, 59 P3d 531 (2002) (context for *PGE* purposes encompasses the broad historical circumstances surrounding a statute's enactment, which includes the contemporaneous enactment of statutes addressing the same subject matter).

ORS 421.121 was part of the omnibus "sentencing guidelines" legislation enacted in 1989 that changed Oregon's sentencing scheme from an indeterminate to a determinate one. *See generally* Or Laws 1989, ch 790; *Hamel v. Johnson*, 330 Or 180, 186-87, 998 P2d 661 (2000) (describing sentencing scheme before and after the enactment of the sentencing guidelines scheme). Under the sentencing guidelines, an inmate serves a term of incarceration imposed as part of a sentence, without eligibility for parole. *State v. Morgan*, 316 Or 553, 556-57, 856 P2d 612 (1993). Thus, the encompassing focus of the 1989 legislation was on the process for *imposing sentence* on offenders subject to the guidelines, not on parole release decisions, which have no application to those offenders.[8]

Consistently with that focus, the other references in the 1989 sentencing guidelines legislation to "term of incarceration" and "term of imprisonment" uniformly are to the length of prison time imposed either as a sentence or a sanction for prohibited conduct. For example, ORS 137.010 was amended by the addition of the following subsection:

> "(10) A *judgment of conviction that includes a term of imprisonment* for a felony committed on or after November 1, 1989, shall state the length of *incarceration* and the length of post-prison supervision. * * *"

Or Laws 1989, ch 790, § 6 (emphasis added). For inmates convicted of felonies committed before the effective date of the sentencing guidelines, the legislature retained the sentencing court's authority to impose "a *sentence to serve a term of*

---

[8] Persons convicted of aggravated murder are not sentenced pursuant to the guidelines because their sentences are fixed by statute. *See* OAR 213-004-0003 (no ranking of offense of aggravated murder under guidelines because the sentence is set by statute). As a result, the only provision in the 1989 legislation pertaining to persons convicted of aggravated murder after the effective date of the guidelines is the section cited earlier stating that various statutes governing parole procedures apply to "offenders convicted of aggravated murder regardless of the date of the crime." Or Laws 1989, ch 790, § 28.

*imprisonment* in the custody of the Department of Corrections" and specified that those sentences would continue to be indeterminate. Or Laws 1989, ch 790, § 11 (emphasis added). Finally, the legislature conferred on the board quasi-sentencing authority to impose a "term of imprisonment as a sanction" for a violation of post-prison supervision. *Id.* at § 36(3); *see also* 197 Or App at 38 n 5.

The reference to "term of incarceration" in the earned time credit provisions of the same enactment (later codified as ORS 421.121) is a parallel reference that should be interpreted to mean the same thing. *See PGE*, 317 Or at 611 (use of same term in related statutes implies that legislature intended same meaning). The credit is available to inmates "*sentenced* to the custody of the [D]epartment [of Corrections] for felonies committed on or after November 1, 1989" and applies against their "term of incarceration." Or Laws 1989, ch 790, § 60 (emphasis added). That language is consistent with the language for *imposing sentence* under the guidelines—*i.e.*, the sentence must include a "term of imprisonment" if the inmate is sentenced to a length of prison time. ORS 137.010(10). Consistently with the idea that earned time credits apply against the term of incarceration imposed as *part of the sentence*, the legislature expressly exempted any "term of incarceration" imposed by the board as a sanction for a violation of post-prison supervision from the benefit of earned time credit. Or Laws 1989, ch 790, § 36. The legislature also expressly provided for how earned time credits would apply to additional terms of incarceration imposed as part of a sentence, such as the so-called "gun minimum" sentence for offenses that have use of a gun as an element of the crime. Or Laws 1989, ch 790, § 72 (amending ORS 161.610).

Given that context, the reference in ORS 421.121(1) to "term of incarceration" takes on a particularly sharp meaning and confirms the legislature's intent—"term of incarceration" as used in ORS 421.121 means the incarcerative term imposed by the court as part of the sentence. We therefore reject relator's position that, under ORS 421.121,

DOC has an obligation to apply earned time credit against the 480-month prison term established by the board.[9]

That conclusion resolves this appeal. The only "term of incarceration" to which relator has been sentenced is a life term. We need not decide whether, as DOC further argues, ORS 421.121 implicitly excludes an indeterminate life sentence because of the difficulty (or, according to DOC, impossibility) of calculating a percentage reduction to the "total term of incarceration," as subsection (2) specifies. Nor do we need to determine whether, assuming that some method of calculation could conceivably be devised, any such method is too discretionary[10] or uncertain in nature to be susceptible to a writ of mandamus. *See generally State ex rel Ricco v. Biggs*, 198 Or 413, 255 P2d 1055 (1953) (describing nature of mandamus as a remedy). It is enough to observe in this case that relator does not seek earned time credit to be applied to his life sentence. Instead, he specifically disavows that DOC has a duty to reduce his life term of incarceration, agreeing that "no mortal can predict with precision the length of his life." Consistently with that disavowal, his writ of mandamus specifically—and only—directed DOC to apply earned time

---

[9] DOC, by rule, has adopted a policy and procedure for recommending to the board modifications in parole release dates for inmates serving indeterminate sentences who are at least 36 months from a scheduled release date. OAR 291-097-0100(1) (implementing ORS 421.121, among other statutes). Although that process potentially applies to relator, he does not rely on it, presumably for two reasons. First, under DOC's procedure, an inmate must first have received a parole release date from the board. OAR 291-097-0100(1). As we earlier described, the board has not set such a date for petitioner. Moreover, DOC's rule gives it discretion to make earned time credit recommendations for inmates serving indeterminate sentences; the rule does not impose a mandatory obligation on the board to do so. *Id.* Thus, mandamus would not be available. *See State ex rel Ricco v. Biggs*, 198 Or 413, 424, 255 P2d 1055 (1953) (mandamus not available to compel an exercise of discretion).

[10] Other than to provide for making recommendations to the board, *see* 197 Or App at 41 n 9, DOC has no rules for granting or calculating earned time credit for inmates convicted of aggravated murder. As earlier noted, those inmates are not sentenced pursuant to the guidelines because their sentences are fixed by statute. *See* 197 Or App at 39 n 8. DOC's current rules provide for earned time credits only for inmates sentenced under the sentencing guidelines. OAR 291-097-0005(3)(a) (DOC policy statement that inmates "sentenced under sentencing guidelines" are eligible for earned time credits up to a maximum of "20 percent of each sentencing guidelines sentence"); OAR 291-097-0010(11) ("prison term reduction credits" are earned time days "applied to a sentencing guidelines sentence" to reduce the inmate's projected release date); *see also* OAR 291-097-0015; OAR 291-097-0020(1); OAR 291-100-0008; OAR 291-100-0100(2).

credit to his 480-month prison term set by the board. *See Johnson v. Craddock et al*, 228 Or 308, 322, 365 P2d 89 (1961) (writ in mandamus case serves same function as a complaint). As we have concluded, however, he is not entitled to that relief. The circuit court therefore properly dismissed the writ.

Affirmed.