Argued and submitted September 8, 2005, decision of Court of Appeals
and judgment of circuit court affirmed April 13, 2006

State ex rel Conrad R. ENGWEILER,
*Petitioner on Review,*

*v.*

Dave COOK,
Director of the Oregon Department of Corrections;
and Charles Kliewer,
Administrator at the Offender Information
and Sentence Computation Agency of the
Oregon Department of Corrections,
*Respondents on Review.*

(CC 01C19211; CA 117264; SC S52169)

133 P3d 904

Andy Simrin, Salem, argued the cause and filed the brief for petitioner on review.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause and filed the brief for respondents on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson,** Chief Justice, and Gillette, Durham, Riggs, De Muniz,*** Balmer, and Kistler, Justices.

GILLETTE, J.

---

** Chief Justice when case was argued.

*** Chief Justice when decision was issued.

**GILLETTE, J.**

This is one of two cases, both decided this date, relating to the life sentence for murder that petitioner presently is serving. The life sentence is for an aggravated murder that petitioner committed as a teenager. In this case, he seeks a writ of mandamus to compel the Department of Corrections (DOC) to permit him to earn credit under ORS 421.121 against his prison term for good prison behavior. A trial judge dismissed the writ, and the Court of Appeals affirmed. *State ex rel Engweiler v. Cook*, 197 Or App 32, 103 P3d 1205 (2005) (*Engweiler III*). We allowed petitioner's petition for review and, for the reasons that follow, now affirm the decision of the Court of Appeals and the judgment of the trial court.

In 1990, when petitioner was 15 years old, he raped, sodomized, and killed a 16-year-old female acquaintance. He was tried as an adult and convicted of aggravated murder, for which the trial court ultimately imposed an indeterminate sentence of life imprisonment.[1] In June 1999, the Board of Parole and Post-Prison Supervision (the board) held a prison term hearing. At the conclusion of that hearing, the board issued Board Action Form (BAF) #1, which established, among other things, a 480-month "prison term" for petitioner. That term was based on a matrix that the board had created in May 1999 to deal with juveniles who had been convicted of aggravated murder and sentenced to life imprisonment.[2] After unsuccessfully seeking administrative review of BAF #1, petitioner petitioned for judicial review in the Court

---

[1] Petitioner originally was sentenced to a life sentence with a 30-year mandatory minimum term of imprisonment under ORS 163.105(1)(c) (1989), *amended by* Oregon Laws 1991, chapter 126, section 8; Oregon Laws 1995, chapter 421, section 2; Oregon Laws 1999, chapter 59, section 31; and Oregon Laws 1999, chapter 782, section 5. The Court of Appeals vacated that sentence on appeal and remanded for resentencing, because the trial court was prohibited under ORS 161.620 (1989), *amended by* Oregon Laws 1993, chapter 33, section 306; Oregon Laws 1993, chapter 546, section 119; Oregon Laws 1995, chapter 422, section 131y; and Oregon Laws 1999, chapter 951, section 2, from imposing a mandatory minimum sentence on any person remanded from the juvenile court who had been under the age of 17 when he committed his crime. *State v. Engweiler*, 118 Or App 132, 846 P2d 1163 (1993) (*Engweiler I*). The legislature thereafter amended ORS 161.120 to permit imposition of a 30-year mandatory minimum sentence on persons in petitioners' circumstances. Or Laws 1995, ch 422, § 131y.

[2] BAF #1 also set a "murder review date" of February 22, 2030, and provided that a "murder review hearing" would be scheduled in December 2029.

of Appeals. The Court of Appeals ultimately dismissed the petition,[3] *Engweiler v. Board of Parole*, 197 Or App 43, 103 P3d 1201 (2005) (*Engweiler IV*). In *Engweiler v. Board of Parole*, 340 Or 361, 133 P3d 910 (2006) (*Engweiler V*), decided this date, we affirm that decision, holding that BAF #1 was not subject to judicial review under ORS 144.335 (1999), *amended by* Oregon Laws 2001, chapter 661, section 1; and Oregon Laws 2003, chapter 352, section 1.

The present case presents an alternative approach to petitioner's effort to obtain judicial review in *Engweiler IV*. Here, as noted, petitioner contends that he is entitled under ORS 421.121(1) to earn "credits" (known as "earned-time credits") against the 480-month prison term that the board set in BAF #1, because he has complied with DOC's rules for appropriate institutional behavior.[4] ORS 421.121(1) provides, in part:

> "Except as provided in ORS 137.635 [concerning certain repeat offenders, not applicable here], *each inmate sentenced to the custody of the Department of Corrections for felonies committed on or after November 1, 1989, shall be eligible for a reduction in the term of incarceration for appropriate institutional behavior*, as defined by rule of the Department of Corrections * * *."

(Emphasis added.) Petitioner requested that DOC make reductions in petitioner's 480-month prison term in accordance with ORS 421.121(1). When DOC refused, he filed the present mandamus proceeding to compel DOC to make the reductions. The trial court issued an alternative writ of mandamus. DOC then moved to dismiss the writ on the grounds that (1) DOC may not deduct earned-time credits from minimum sentences; (2) the sentencing court did not commit petitioner to DOC custody under the sentencing guidelines; and (3) earned-time credits do not apply to inmates serving life sentences. The trial court agreed with DOC with respect to all three arguments and dismissed the writ.

---

[3] The Court of Appeals initially denied the Board of Parole's motion to dismiss the petition for judicial review and allowed the case to go forward. *Engweiler v. Board of Parole*, 170 Or App 653, 13 P3d 1009 (2000) (*Engweiler II*).

[4] In his petition for a writ of mandamus, petitioner alleged that he had been in full compliance with DOC rules defining appropriate institutional behavior since he first was confined to prison. DOC has not disputed that assertion.

Petitioner appealed the trial court's ruling to the Court of Appeals, arguing that the plain words of ORS 421.121(1) make his eligibility for earned-time credits mandatory and that none of the three bases for the trial court's ruling was meritorious. Specifically, petitioner argued that (1) he was not serving a mandatory minimum sentence (indeed, the Court of Appeals in *Engweiler I* had vacated the mandatory minimum sentence that the trial court first had imposed); (2) whether or not he was serving a guidelines sentence was immaterial under ORS 421.121(1); and (3) ORS 421.121(1) does not make an exception for inmates serving life sentences.

The Court of Appeals affirmed the trial court's ruling, but on another ground. In that court's view, ORS 421.121(1) provides for eligibility for earned-time credits against an inmate's "term of incarceration," and that phrase, the court held, refers only to the term of incarceration that a sentencing court imposes, not to a prison term that the board may impose. *Engweiler III*, 197 Or App at 40. The Court of Appeals observed that petitioner had confined his arguments to his eligibility under ORS 421.121(1) for earned-time credits against the 480-month prison term that the board had set in BAF #1. Indeed, the Court of Appeals observed, petitioner specifically had disavowed any duty on DOC's part to reduce his life sentence, acknowledging that "no mortal can predict with precision the length of his life."[5] *Id.* at 41. Accordingly, the court held, petitioner was not entitled to earned-time credits under ORS 421.121(1) for any of the reasons that he had advanced. *Engweiler III*, 197 Or App at 42. We address the issue of the Court of Appeals' rationale first.

The operative words of ORS 421.121(1) provide that "each inmate sentenced to the custody of the Department of Corrections for felonies committed on or after November 1, 1989, shall be eligible for *a reduction in the term of incarceration* for appropriate institutional behavior." (Emphasis added.) As a preliminary matter, we observe that there is no

---

[5] Petitioner now disputes that he disavowed any argument that he is entitled to earned-time credits against his life sentence. We need not resolve that question, however, in light of our conclusion that ORS 421.121(1), does not, in petitioner's case, apply to the sentence the trial court imposed, but, instead, to any "term of incarceration" that the board eventually may impose on petitioner's behalf.

dispute concerning the following: (1) petitioner was "sentenced to the custody of the Department of Corrections" for a felony committed after November 1, 1989; (2) ORS 421.121(1) applies to "each inmate" so sentenced, subject only to an exception not applicable here; (3) ORS 421.121 contains no explicit exception for inmates convicted of any particular crimes, including aggravated murder, for inmates not sentenced under the sentencing guidelines, or for inmates sentenced to life imprisonment; and (4) the phrase "each inmate * * * *shall be eligible* for a reduction in the term of incarceration" (emphasis added) indicates that DOC's duty to reduce the "term of incarceration" is mandatory for each inmate who meets the criteria for such reductions elsewhere described in ORS 421.121. In light of the foregoing, we conclude, as did the Court of Appeals, that the answer to the question presented by this case turns on the meaning of the phrase "term of incarceration."

■       Under this court's statutory interpretation paradigm, our task is to discern the intent of the legislature. In so doing, we first consider the text of the statute, in context. If the legislature's intent is clear at that level of analysis, further inquiry is unnecessary.

As the Court of Appeals noted, the phrase "term of incarceration" is not defined in the statutes. At first blush, however, the phrase "term of incarceration" does not appear to be ambiguous or in need of definition or interpretation. The plain and natural reading of the phrase would seem to refer simply to the amount of time that a prisoner must spend in prison before being eligible for parole. That would make a "term of incarceration" unlike a "sentence," the latter being something that is uniquely within a court's province to impose and that can include more than the amount of time that a prisoner must serve before being eligible for parole.

The foregoing notwithstanding, the Court of Appeals, after an analysis of the context of ORS 421.121(1), concluded that the phrase "term of incarceration" essentially is a term of art that refers to a prison term imposed by a sentencing court and not to a prison term set by the board. In other words, in the view of that court, "term of incarceration" in ORS 421.121(1) means "sentence." The court reached that

conclusion first by demonstrating that the phrase "term of incarceration" is used interchangeably in the sentencing and parole statutes with the phrase "term of imprisonment" and, then, by explaining that its review of those statutes led it to the observation that, when the statutes use either of those phrases, they "typically refer to one of two closely related concepts: (1) the amount of time that a *sentencing court is authorized* to impose for particular offense; or (2) the amount of prison time that a *sentencing court actually imposes* as part of a sentence for a particular offender." *Engweiler III*, 197 Or App at 37-38 (emphasis in original).

The court's conclusion that the phrase "term of incarceration" is a term of art does not follow from those premises, however. The unremarkable fact that the sentencing and parole statutes routinely refer to a sentencing court's authority to impose a sentence that includes some period, some "term," of incarceration is not, in our view, persuasive evidence that the phrase "term of incarceration" necessarily refers only to (or is coextensive with) a sentence imposed by a court. Indeed, the multiplicity of usages just as convincingly demonstrates the opposite: The phrase is not a term of art; the words merely mean what they say in each of the contexts in which they are used. To illustrate, statutes providing that a court may impose a sentence that includes a "term of incarceration" merely reflect the fact that there are various ways in which an offender may be punished, including serving a period of time in prison, as opposed to being placed (for example) on probation.

The Court of Appeals found further support for its conclusion that the phrase "term of incarceration" in ORS 421.121(1) means the prison term imposed by a sentencing court in the fact that ORS 144.108(3)(a) specifically exempts from ORS 421.121 those "terms of incarceration" that the board imposes as a sanction for post-prison supervision violations.[6] However, we think that the existence of that statute

---

[6] ORS 144.108(3) provides, in part:

"A person who is ordered to serve a term of incarceration in a jail or state correctional facility as a sanction for a post-prison supervision violation is not eligible for:

"(a) earned credit time as described in ORS 169.110 or 421.121."

cuts the other way: If "term of incarceration" were a term of art referring specifically to the amount of prison time that a *sentencing court* imposes, then it would have been unnecessary for the legislature to exempt *board-imposed* terms of incarceration from ORS 421.121.

To summarize the foregoing, there is nothing that we perceive in the phrase "term of incarceration" or in the context in which that phrase is used in ORS 421.121(1) or in other related statutes that suggests to us that the phrase means anything other than simply the amount of time that an inmate must spend in prison before he is eligible to be paroled. The alternative approach taken by the Court of Appeals—interpreting the phrase to mean only those terms of incarceration imposed by a court as part of a sentence—is not consistent with the statutory wording.

Our conclusion that the phrase "term of incarceration" refers to the amount of time that an inmate must spend in prison before the inmate is eligible for parole does not, however, fully answer the question presented in this case, *i.e.*, the question whether petitioner presently is serving an identifiable "term of incarceration" for purposes of computing earned-time credits under ORS 421.121(1). That question arises because, unlike most other inmates, petitioner is serving a life sentence.

ORS 421.121 was enacted in 1989 as part of a larger legislative enactment, Oregon Laws 1989, chapter 790, which, among other things, substantially changed the way courts sentenced felony offenders. Before 1989, Oregon used a "parole matrix system" for sentencing offenders convicted of certain felonies. *Hamel v. Johnson*, 330 Or 180, 186, 998 P2d 661 (2000). As this court explained in *Hamel*:

> "Under that system, a trial court imposed an indeterminate sentence of a specified duration on a defendant who had been convicted of a crime. An indeterminate sentence stated only a maximum term to be served under the jurisdiction of the Department of Corrections. Such a sentence did not establish the length of time that a defendant was to

ORS 144.108(3) has been amended several times in minor respects since it was enacted in 1989, but not in ways that affect the analysis of this case.

be incarcerated. *Harris v. Board of Parole*, 288 Or 495, 503, 605 P2d 1181 (1980). Regardless of the length of an indeterminate sentence, under ORS 144.780 and ORS 144.785, 'it is the [Board] that determines the actual duration of imprisonment.' *Id.* In other words, for prisoners sentenced under the matrix system, the Board, not the court, determines the actual duration of imprisonment. *Price [v. Board of Parole]*, 300 Or [283] at 288[, 709 P2d 1075 (1985)]. *See also* OAR 213-002-0001(3)(b) ('Although many citizens believe the indeterminate sentence sets the length of imprisonment, that sentence only sets an offender's maximum period of incarceration and the matrix controls actual length of stay.')."

In 1989, the legislature adopted a new system. That system required judges to use defined presumptive punishments for felony convictions, subject to some judicial discretion to deviate from those presumptive sentences. Those defined presumptive sentences were set out in sentencing "guidelines" created by the State Sentencing Guidelines Board and later approved by the state legislature. Or Laws 1989, ch 790, § 87. The new system applied to offenders who committed felonies after November 1, 1989; offenders who had committed crimes before that date still were to be sentenced under the old parole matrix system. *See* ORS 137.120 (so providing). Thus, under the guidelines system, courts no longer merely set an outermost limit on the length of an inmate's stay in prison. Instead, in almost all cases for criminals convicted after November 1, 1989, sentencing courts impose what actually would be the offender's "term of incarceration."[7]

However, that is not the case in every instance. For a few years after November 1, 1989, there remained a small class of inmates who continued to receive indeterminate sentences—those inmates who, like petitioner, committed aggravated murder but who were juveniles at the time of their crimes. As we shall explain, for them, the *board* set the

---

[7] As the legislature stated in the Statement of Purposes and Principles for the guidelines, Oregon Laws 1989, chapter 790, section 96, after the adoption of the guidelines, "[s]entences of imprisonment should represent the time the offender will actually serve, subject only to any reduction authorized by law."

"term of incarceration," as it had for virtually all offenders before the guidelines were adopted.

As noted, the sentencing guidelines define presumptive sentences for almost all felonies. They do so by creating a grid for establishing the sentence in light of the offender's criminal history and the seriousness of the offense. The vertical axis of the grid is the Crime Seriousness Scale, which classifies the crime of conviction according to its seriousness in relation to other crimes. OAR 213-004-0001(1). The horizontal axis of the grid is the Criminal History Scale, which classifies the offender's personal criminal history. *Id.* Each block on the grid provides the presumptive sentencing range for offenders whose crime and criminal history places them in that block. OAR 213-004-0001(2).

Certain offenses are "unranked," *i.e.*, not assigned a block within the grid. That is true for various reasons, among them the fact that the offenses rarely are prosecuted or they encompass such a broad spectrum of criminal conduct that a single classification is impractical. OAR 213-004-0004; Commentary to OAR 253-04-004 (1989). For most of those crimes, the sentencing court retains the authority to determine the appropriate crime category. *Id.* The crime of aggravated murder also is unranked, but the reason in that case is that the sentencing court does not have discretion to determine the appropriate punishment. Instead, the applicable regulation provides, "The offense of Aggravated Murder is not ranked in the Crime Seriousness Scale because the sentence is set by statute * * *." OAR 213-004-0003.

When petitioner committed his offense, ORS 163.105 provided that the trial court had to sentence a person convicted of aggravated murder either to death, to life in prison without the possibility of release or parole, or to life in prison with a 30-year mandatory minimum before becoming eligible for parole. Also at that time, however, ORS 161.620 (1989) provided that,

"[n]otwithstanding any other provision of law, a sentence imposed upon any person remanded from the juvenile court under ORS 419.533 shall not include any sentence of death or life imprisonment without the possibility of release or

> parole nor imposition of any mandatory minimum sentence, except that a mandatory minimum sentence under ORS 163.105(1)(c) shall be imposed where the person was 17 years of age at the time of the offense."

Accordingly, the only sentencing option available to the sentencing court in petitioner's case was life imprisonment with the possibility of release or parole, and that is the sentence that the court imposed on him on remand from the Court of Appeals following *Engweiler I*. Having been sentenced to an indeterminate life sentence for a felony committed after November 1, 1989, petitioner was and is in the same position as an inmate sentenced before the adoption of the guidelines. As a consequence, however, petitioner's sentence stated only the maximum term that he could serve under DOC's jurisdiction; it did not establish the actual length of time that he was to be incarcerated. For him, as for any inmate sentenced to an indeterminate sentence before the adoption of the guidelines, regardless of the length of that sentence, the board is responsible for determining the actual duration of his imprisonment.

■    But has the board made that determination? Thus far, it has not. Instead, in petitioner's case, the board, in BAF #1, set a 480-month "prison term." That means that, after 480 months, petitioner will be eligible for consideration for parole and, if he is considered an appropriate candidate, the board will set a release date. (If he is not given a release date, petitioner will be given a concrete date on which he will be further considered for parole.) Thus, petitioner does not at present have a "term of incarceration" that he is serving. And, as discussed, ORS 421.121(1) provides only that "each inmate sentenced to the custody of the Department of Corrections for felonies committed on or after November 1, 1989, shall be eligible for a reduction in the term of incarceration for appropriate institutional behavior." Nothing in that statutory wording creates any basis for crediting earned-time credits against any other date, including the date on which the board may—or may not—set petitioner's parole release date. If the board does set petitioner's parole release date, it also will have defined his "term of incarceration." It follows that petitioner is not eligible for a reduction in the prison term that the board imposed in BAF #1, because petitioner is

not yet serving a "term of incarceration." The Court of Appeals was correct in so holding, although the reasons given by that court were incorrect.

We recognize that, in so holding, we leave petitioner unable to obtain a term of incarceration—and, therefore, unable as yet to make use of earned-time credits—when virtually all other convicted felons can obtain and apply earned-time credits. But petitioner confined the present mandamus case to the theory that he was entitled to have the credits deducted from his next hearing date and, as we have explained, that theory cannot be sustained under the wording of ORS 421.121(1). Petitioner now may be able, based on this opinion and our opinion in *Engweiler V*, to predicate a further mandamus proceeding on a theory that accepts the statutory scheme but points to other sources of law—*e.g.*, the state and federal constitutions—as a basis for relief. However, petitioner is not entitled to the relief that he seeks in *this* proceeding.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.