No. 427 June 26, 2024 417

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

JEREMY RYAN LEHMAN,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A176074

Submitted December 20, 2022.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher Page, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Reversed and remanded.

Powers, J., dissenting.

**HELLMAN, J.**

Petitioner seeks judicial review of an order of the Board of Parole and Post-Prison Supervision (the board) that denied his request to adjust his parole release date for aggravated murder after the Department of Corrections (DOC) calculated his "earned" date under ORS 421.121 and DOC rules. The board concluded that it lacked authority to set petitioner's parole release date, which had already passed, earlier than the date of his exit interview. Reviewing the board's order for legal error, *Sohappy v. Board of Parole*, 329 Or App 28, 35, 540 P3d 568 (2023) (citing ORS 183.482(8)(a) and ORS 144.335(3)), we reverse and remand.

The relevant facts are mainly procedural and not disputed. In 1994, at age 17, petitioner entered the victim's mobile home to steal marijuana and beat the victim to death with a shovel as the victim lay asleep on the couch. A jury convicted petitioner of aggravated murder, and the trial court sentenced him pursuant to ORS 163.105 (1993) to life in prison with a 30-year minimum term of incarceration. In 2007, petitioner pleaded guilty to second-degree assault in a separate case, and the trial court sentenced him to 70 months in prison and ordered that sentence to be served consecutively to any previously imposed sentence.

In April 2019, the board held a murder-review hearing and found that petitioner was likely to be rehabilitated within a reasonable period of time. The board converted petitioner's sentence for aggravated murder to life with the possibility of parole, set his prison term for 290 months, and set his projected parole release date for October 6, 2019. In August 2019, the board held an exit interview and affirmed petitioner's October 6, 2019, parole release date.

In March 2021—while he was still in custody serving his consecutive 70-month sentence—petitioner sought a determination that he was eligible for a reduction in his term of incarceration for aggravated murder under ORS 421.121 and DOC administrative rules. The effect of such eligibility would mean that petitioner could have begun serving his consecutive 70-month prison term earlier than October 6, 2019. In April 2021, a DOC Offender Information

and Sentence Computation analyst sent the board a memorandum that estimated petitioner's "earned" date for aggravated murder to be December 20, 2016. The board reviewed petitioner's file and issued the order at issue, in which it concluded that it lacked authority to set a parole release date for aggravated murder "prior to the date the of the exit interview hearing." However, the board "adjusted" the "firm [parole] release date" it had established at petitioner's exit interview to the date of the exit interview. That is, the board retroactively changed petitioner's parole release date to an earlier date in the past, but changed it to August 15, 2019 (the date of petitioner's exit interview) rather than to December 20, 2016 (DOC's calculated "earned" date).

Petitioner sought administrative review. Petitioner argued that the board has a legal duty under ORS 421.121 and applicable administrative rules to grant him earned-time credit on his full 290-month term of incarceration; that the board should have adjusted his parole release date to December 20, 2016, the earned date calculated by DOC; and that the board violated his right to due process by depriving him of earned-time credit because ORS 421.121 created a liberty interest in early release.

The board denied relief. It explained that its "position is that you are not entitled to earned-time credit until after the Board converted your projected release date to a firm release date because the Board would not have released you prior to getting an opportunity to conduct an exit interview under ORS 144.125." Relying on *Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010), the board explained that it "was entitled to interview you and you were not entitled to release until the exit interview occurred" and that it therefore "properly adjusted * * * your release date to August 15, 2019, which was the date of your exit interview." The board rejected petitioner's due process argument without discussion.

Petitioner timely seeks judicial review and renews his contention that the board was required to give him earned-time credit for the full term of his incarceration. The board disagrees, contending that it correctly released petitioner on parole on August 15, 2019, because it lacks

authority to release petitioner on parole for aggravated murder before it has conducted an exit interview.

We begin with the statute governing earned time, ORS 421.121 (1993),[1] which provides, in relevant part:

"(1) Except as provided in ORS 137.635 [concerning repeat offenders], each inmate sentenced to the custody of the department for felonies committed on or after November 1, 1989, shall be eligible for a reduction in the term of incarceration for appropriate institutional behavior, as defined by rule of the Department of Corrections * * *."

In *State ex rel Engweiler v. Cook*, 340 Or 373, 133 P3d 904 (2006), the Supreme Court held that ORS 421.121 applies to an inmate serving a life sentence for aggravated murder, but not until the board has defined the inmate's "term of incarceration" upon setting the parole release date. In that case, the petitioner was serving a life sentence for aggravated murder and sought a writ of mandamus to compel DOC to grant him earned time under ORS 421.121. The court explained that there was no dispute that the petitioner was sentenced to the custody of DOC for a felony committed after November 1, 1989; that ORS 421.121(1) applies to "each inmate" so sentenced, subject only to an exception that did not apply; that "ORS 421.121 contains no explicit exception for inmates convicted of any particular crimes, including aggravated murder, for inmates not sentenced under the sentencing guidelines, or for inmates sentenced to life imprisonment;" and that "the phrase 'each inmate * * * shall be eligible for a reduction in the term of incarceration' indicates that DOC's duty to reduce the 'term of incarceration' is mandatory for each inmate who meets the criteria for such reductions elsewhere described in ORS 421.121." *Id.* at 377-78 (emphasis omitted).

The court determined that the case turned on the meaning of the phrase "term of incarceration" and construed it to mean "the amount of time that an inmate must spend in prison before the inmate is eligible for parole." *Id.*

---

[1] We apply the statutes and rules that were in effect at the time petitioner committed his offenses. *See Janowski*, 349 Or at 436-37 (applying the statutes and administrative rules in effect when the petitioners committed their crimes).

at 378-80. However, the board had not yet determined the "actual length of time that [the petitioner] was to be incarcerated" because it had not yet set his parole release date, only a 480-month prison term after which he would be eligible for parole consideration. *Id.* at 383 ("If the board does set petitioner's parole release date, it will also have defined his 'term of incarceration.'"). The court therefore concluded that, because the petitioner was not yet serving a "term of incarceration," he was not eligible to receive earned time under ORS 421.121. *Id.* at 383-84. The court later affirmed that its construction of "term of incarceration" was not *dictum*, and it adhered to it. *Engweiler v. Persson/Dept. of Corrections*, 354 Or 549, 558-61, 316 P3d 264 (2013).

Here, the board does not dispute that ORS 421.121 applies to petitioner or that, unlike in *Engweiler v. Cook*, the board has already defined petitioner's "term of incarceration" when it set his parole release date. However, the board argues, as it concluded below, that its authority to set a parole release date for aggravated murder is limited by statute and case law.

First, the board argues, and we agree, that ORS 163.105 (1993) controls the process by which it may release petitioner on parole. *See* ORS 144.110(2)(b) ("The board shall not release a prisoner on parole *** [w]ho has been convicted of murder defined as aggravated murder under the provisions of ORS 163.095, except as provided in ORS 163.105."); *cf. Corgain v. Board of Parole*, 213 Or App 407, 420-22, 162 P3d 990 (2007) (reaching that conclusion under ORS 144.110 (1981) and holding that it applies to inmates who will be released on parole to begin serving a consecutive sentence). However, the board has already satisfied the statutory prerequisites for releasing petitioner on parole, including conducting an ORS 144.125 exit interview where it found no reason to postpone petitioner's scheduled parole release date.

Second, the board asserts that under *Janowski* and *Engweiler v. Persson/DOC*, it "must release [an inmate serving a life sentence] on a future scheduled release date after engaging in the parole-consideration process." The board takes a slightly different position than it did below and

argues that "there is no authority for the board to release petitioner," or a similarly situated inmate serving a sentence for aggravated murder, "on parole on a date in the past."[2]

The board reads *Janowski* and *Engweiler v. Persson*/*DOC* too broadly. In *Janowski*, the court concluded that the petitioner was not entitled to immediate release, even though he had already reached and passed his matrix-based release date, because the board was still authorized to conduct an exit interview and defer his parole release date under ORS 144.125. 349 Or at 459. In *Engweiler v. Persson*/ *DOC*, the court likewise concluded that the petitioner was not entitled to immediate release, "[e]ven though the application of earned time credits appear[ed] to advance [the petitioner's] 'initial release date' to a date in the past" because "the board cannot 'schedule' his *physical* release for a date in the past." 354 Or at 566 (emphasis added). The court reasoned that the petitioner's "*physical* release necessarily will be scheduled for a future date" before which "the board will have the opportunity to conduct its prerelease interview." *Id.* (Emphasis added.)

Those cases stand for the proposition that the board cannot schedule an inmate's *physical* release date in the past and that it may postpone an inmate's parole release date under ORS 144.125 until after it has the opportunity to conduct an exit interview. But they are silent on whether the board may retroactively adjust petitioner's parole release date to account for earned time under ORS 421.121. Here, petitioner is not seeking immediate release (by virtue of a past physical release date) but rather seeks administrative adjustment of his parole release date to account for earned time under ORS 421.121, which would allow him to begin serving a consecutive guidelines sentence sooner. Under those circumstances, *Janowski* and *Engweiler v. Persson*/ *DOC* do not limit the board's authority to "schedule" petitioner's release date. The board erred when it concluded otherwise.

---

[2] Although not dispositive, we note the board's argument on appeal is at odds with what it did in petitioner's case. In April 2021, the board set petitioner's parole release date in the past when it adjusted petitioner's parole release date from October 2019 to August 2019.

The board has not pointed to any other source of law, either below or on judicial review, that would constrain its authority to administratively adjust petitioner's release date after the fact in accordance with ORS 421.121. In fact, it appears to have believed that it had the authority to do so when it adjusted petitioner's release date to the date of his (past) exit interview. Further, the board did not address petitioner's other arguments, including that he has a liberty interest in earned time credit under the Due Process Clause. We therefore reverse and remand the board's order for reconsideration and so the board may address petitioner's other arguments in the first instance.

Reversed and remanded.

**POWERS, J.,** dissenting.

I respectfully dissent from the majority opinion's conclusion that petitioner's release date for his aggravated murder conviction could incorporate earned-time credit such that his release date is before the exit interview held under ORS 144.125. In my view, the majority opinion incorrectly creates a distinction between petitioner's physical release date and what it calls an "administrative adjustment of his parole release date" for purposes of an earned-time calculation and the start of a consecutive guidelines sentence. *See* 333 Or App at 423. I do not understand the applicable framework to make such a distinction. Accordingly, I respectfully dissent.

I begin with a brief overview of the release framework for petitioner's aggravated murder conviction. Petitioner was convicted of aggravated murder based on an incident in June 1994 and sentenced to life with the possibility of parole after 30 years. In 2007, petitioner was convicted of second-degree assault for assaulting a corrections officer and sentenced to a 70-month sentence to be served consecutively to the aggravated murder sentence. As I understand the applicable framework, petitioner's aggravated murder conviction carried three possible sentencing options, one of which was life with the possibility of release on parole after a mandatory minimum of 30 years. *See* ORS 163.105(1)(c) (1993). To be released on that charge, petitioner

had to serve at least 20 years before the Board of Parole and Post-Prison Supervision held a murder-review hearing under ORS 163.105(2) (1993). If the board determines that petitioner is likely to be rehabilitated within a reasonable period of time—which the board did in April 2019 in this case—then the board would enter an order that has the effect of converting the terms of petitioner's sentence to life with the possibility of parole. *See* ORS 163.105(3) (1993); *see also Janowski/Fleming v. Board of Parole*, 349 Or 432, 453, 245 P3d 1270 (2010) (concluding that the legislature intended that the board, after making the requisite determination following a murder-review hearing, set a release date in accordance with the parole matrix in place at the time of the offense).

Importantly, after scheduling a projected parole release date using the matrix, the board had the option to hold an exit interview under ORS 144.125 (1993)—as it did in this case in August 2019—before petitioner would be released on parole for the aggravated murder conviction. *Janowski/Fleming*, 349 Or at 459 (explaining that ORS 144.125 allows the board to interview an adult in custody to determine if any of the statutory grounds for postponement of a parole release date are present). Once petitioner is released on parole for his aggravated murder conviction, then the consecutive 70-month sentence would begin to run.

Despite agreeing that ORS 163.105 (1993) controls the process by which petitioner is released on parole, 333 Or App at 422, the majority opinion then concludes that the board can apply ORS 421.121 to adjust the release date on petitioner's aggravated murder charge to a date before the board held the exit interview. In my view, no part of the statutory framework—as layered and complicated as it may be—supports that conclusion. The application of ORS 421.121 to petitioner's aggravated murder conviction over the release process in ORS 144.125 is, in my view, contrary to the statutory framework. *See Engweiler v. Persson/Dept. of Corrections*, 354 Or 549, 567, 316 P3d 264 (2013) (recognizing that the review process in ORS 144.125 "exists to ensure that offenders are not released to parole unless and until the board is satisfied that their release is consistent with

community safety"); *see also id.* (explaining that the "legislature expressly made the parole scheme and that review process applicable to aggravated murder 'regardless of the date of the crime.' Or Laws 1989, ch 790, § 28, *compiled as a note after* ORS 144.110 (1989)").

In my view, because the board correctly rejected petitioner's assertion that his release date for the aggravated murder conviction may be set by application of ORS 421.121 to a date before it made a release determination under ORS 144.125, I respectfully dissent.