174 P.3d 1022 (2007)
216 Or. App. 456
STATE of Oregon, Plaintiff-Respondent,
v.
Cornelius Key DAVIS, Defendant-Appellant.
96051015; A126827.
Court of Appeals of Oregon.
Argued and Submitted June 8, 2007.
Decided December 12, 2007.
*1023 Andy Simrin, Salem, argued the cause and filed the brief for appellant.
Kaye E. McDonald, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Before HASELTON, Presiding Judge, and ARMSTRONG and ROSENBLUM, Judges.
HASELTON, P.J.
This case is before us for a third time. Defendant, who was convicted of felon in possession of a firearm (FIP), ORS 166.270, and murder, ORS 163.115, appeals, challenging his murder conviction and his sentences for both crimes. Specifically, defendant raises three distinct arguments: First, his retrial for murder, following the second appeal, in which the Supreme Court reversed defendant's original murder conviction, was barred as untimely under Article I, section 10, of the Oregon Constitution. Second, the trial court's imposition of a more severe sentence for murder, following defendant's conviction on retrial, was erroneous under State v. Turner, 247 Or. 301, 429 P.2d 565 (1967). Third, in resentencing defendant following his second trial, the trial court erred in refusing to consider defendant's challenge, based on Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to the imposition of an upward departure sentence on defendant's FIP conviction. For the reasons that follow, we reject defendant's first two contentions but agree with the third. Accordingly, we affirm defendant's convictions but remand for resentencing.
The circumstances material to our review are, albeit somewhat complicated, undisputed. We recount them in some detail because the timing and relationship of various events over more than a decade are critical to our assessment of defendant's contentions, especially the second assignment of error.
In May 1996, defendant was indicted on charges of FIP and murder. In February 1997, the trial court made a pretrial evidentiary ruling, excluding evidence of uncharged misconduct, and the state appealed pursuant to ORS 138.060. On appeal, we concluded that the trial court had erred in excluding some of the disputed evidence. State v. Davis, 156 Or.App. 117, 967 P.2d 485 (1998) (Davis I).
After remand, in January 1999, defendant was tried and found guilty of both murder and FIP. The trial court imposed a sentence of 25 years' imprisonment with lifetime post-prison supervision on the murder conviction and, on the FIP conviction, imposed an upward dispositional and durational departure sentence of 36 months, to run consecutively to defendant's murder sentence. The court based the imposition of the upward departure on a variety of aggravating circumstances:
"Number one, it resulted or was connected to the commission of a murder and the death of a human being; number two, it was and did cause greater violence; number three, it caused undue and extraordinary pain and suffering to the family of the victim; and number four, it caused extraordinary pain and undue suffering to the family of the defendant."
Defendant did not, at that time, raise any objection to the upward departure sentence.
Defendant appealed and challenged his murder conviction. He argued, particularly, that the trial court had erroneously excluded certain evidence offered in support of the theory of defense that the victim had not been murdered but, instead, had committed suicide. Defendant did not challenge his FIP conviction. We affirmed without opinion. State v. Davis, 181 Or.App. 467, 46 P.3d 229 (2002).
The Supreme Court allowed review. In briefing to the Supreme Court, the state acknowledged that the excluded evidence that was the subject of defendant's appeal was, in fact, admissible, but contended that its erroneous exclusion was harmless. The Supreme Court ultimately reversed "the judgment of the circuit court" based on the asserted evidentiary error and "remanded to the circuit court for further proceedings." State v. Davis, 336 Or. 19, 35, 77 P.3d 1111 (2003) (Davis II).
*1024 Following the remand directed in Davis II, defendant moved in July 2004 to dismiss the case pursuant to Article I, section 10.[1] Defendant emphasized that approximately eight years had elapsed since the indictment and contended that the passage of more than five years between his first trial and the scheduled second trial on the murder charge was necessitated by the state's erroneous evidentiary objection in the first trial and its failure to timely acknowledge the trial court's error in sustaining that objection. The trial court denied that motion.
On retrial, in August 2004, defendant abandoned his original trial defense that the victim had committed suicide and, instead, testified that he had pointed the gun at the victim and it had gone off accidentally. The jury, rejecting that account, convicted defendant of murder.
At sentencing, defendant advanced the two arguments that underlie his second and third assignments of error on appeal. First, defendant argued that, under Turner, he could not receive a sentence on his murder conviction that was greater than the originally imposed 25-year sentence with lifetime post-prison supervision. Second, defendant contended that the trial court's original upward departure sentence on his FIP convictiona conviction and sentence that he had not challenged in Davis IIwas erroneously predicated on judicial factfinding, in violation of the principles announced in Blakely.
The trial court rejected both arguments. First, invoking an exception to Turner recognized in State v. Alvarez, 168 Or.App. 393, 7 P.3d 616, rev. den., 331 Or. 244, 18 P.3d 1099 (2000), the court concluded that Turner did not preclude the imposition of a more severe sentence for murder, because the sentence imposed following defendant's original trial was erroneous. Consequently, the trial court, pursuant to ORS 163.115(5)(a) and (b), sentenced defendant to life imprisonment with a 25-year minimum incarceration term. Second, the court held that it lacked the "power or authority" to consider defendant's Blakely-based challenge to the FIP sentence, because defendant had failed to challenge that sentence in Davis II.
On appeal, as noted, defendant argues that (1) his retrial for murder following the Davis II remand was barred as untimely under Article I, section 10; (2) Turner prohibited the imposition of a more severe sentence for murder following his conviction on remand; and (3) the trial court erred in determining that it lacked the "power or authority" to address defendant's Blakely-based challenge to the FIP sentence in the context of resentencing following the Davis II remand. We address each assignment in turn.
Defendant's first assignment of error requires little discussion. Defendant's position depends on the premise that, although there was no constitutionally impermissible delay between the issuance of the indictment (May 1996) and the original trial resulting in defendant's conviction (January 1999), the protections of Article I, section 10, were implicated by the time expended in resolving defendant's successful appeal from his first conviction, i.e., the time between January 1999 and the 2004 retrial. Defendant contends that the latter interval is material to a constitutional "speedy trial" analysis, because the state ultimately acknowledged that the trial court's evidentiary ruling that was the subject of defendant's appeal was erroneousand, if the state had done so earlier, much of that "delay" could have been avoided.[2]
Defendant's position fails because the Supreme Court and we have consistently construed the "without delay" provision of Article I, section 10, as pertaining to the time between indictment and a defendant's original trial. See, e.g., State v. Vasquez, 336 Or. *1025 598, 609-10, 88 P.3d 271 (2004) (emphasizing that purpose of "speedy trial" provisions is "to prevent prolonged pretrial incarceration" (emphasis added)); State v. Harberts, 331 Or. 72, 82, 11 P.3d 641 (2000) (same). No reported Oregon decision has ever extended the protections of Article I, section 10, to the period between a defendant's original trial and the remand following a successful appeal. Indeed, if defendant were correct, then the ultimate extension of his logic would be that whenever a defendant successfully appealed and secured a remand for retrialor, indeed, whenever a post-conviction petitioner succeeded in obtaining a new criminal trialthe time elapsed in those processes would be cognizable under Article I, section 10, to preclude any continuation of the prosecution. We decline defendant's unprecedented invitation to go so far.
In his second assignment of error, defendant contends that the trial court's imposition of a more onerous sentence for murder following his retrial (viz., a life sentence with a 25-year minimum prison sentence) than that imposed following the original sentence (viz., a sentence of 25 years' imprisonment with lifetime post-prison supervision) violated Turner. The parties do not dispute that defendant's present murder sentence is, in fact, harsher than that originally imposed. However, they do dispute whether the original sentence was erroneous. The trial court, in rejecting defendant's arguments, concluded that "a series of cases basically allows the court to correct what was an erroneous judgment in 1999."
The proper resolution of this matter requires an understanding of the iterations of the statute prescribing the sentence for murder, ORS 163.115, judicial constructions and applications of that statute as it evolved, and the nuanced interplay between those statutory iterations and judicial constructions vis-à-vis the timing of the original imposition of sentence (March 1999) and the ultimate imposition of sentence (November 2004).
In 1989, the legislature enacted the state sentencing guidelines, which placed the crime of murder on the sentencing guidelines grid, with presumptive or departure sentences, expressed in terms of months of imprisonment, to be determined based on the offender's criminal history and the severity of the crime. However, at that time, ORS 163.115(3) required that a person convicted of murder receive an indeterminate sentence of life imprisonment, with the possibility of parole after 10 to 25 years. In State v. Morgan, 316 Or. 553, 856 P.2d 612 (1993), the court held that the indeterminate life sentence for murder provided in the then-existing version of ORS 163.115(3)(a) had been impliedly repealed by the enactment of the sentencing guidelines.
In 1995, the legislature amended the same provision of ORS 163.115 that the Morgan court had held was repealed by the legislature's 1989 enactment of the sentencing guidelines. Or. Laws 1995, ch. 421, § 3. The amended version, ORS 163.115(5) (1995), provided as follows:
"(a) A person convicted of murder, who was at least 15 years of age at the time of committing the murder, shall be punished by imprisonment for life.
"(b) When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 25 years without possibility of parole[.]"
In State v. Francis, 154 Or.App. 486, 962 P.2d 45, rev. den., 327 Or. 554, 971 P.2d 410 (1998), we rejected the defendant's argument that, under Morgan, he was entitled to be sentenced for murder pursuant to the sentencing guidelines. We concluded that the legislature, through its 1995 amendments to the statutory provision that the Morgan court had held to be repealed, had reenacted it, and that ORS 163.115, when read together with ORS 137.700, required "that a person convicted of murder shall be punished by an indeterminate term of life in prison, with a mandatory minimum of 25 years[.]" Id. at 491, 962 P.2d 45. Thus, if Francis had been the "last word" as of defendant's sentencing in 1999, then-extant authority would have compelled the imposition of an indeterminate life sentence with a 25-year mandatory minimum.
Francis was not, however, the "last word" as of March 1999, when the trial court imposed *1026 its original sentence in this case. Rather, roughly a month before, we had decided State v. McLain, 158 Or.App. 419, 974 P.2d 727 (1999), whose significance is the focus of much of the parties' present dispute.
In McLain, the defendant was convicted of murder, and the trial court imposed a sentence of life imprisonment with a mandatory minimum sentence of 25 years. Id. at 421, 974 P.2d 727. On appeal, the defendant contended that the provision of ORS 163.115(5)(a) that required a sentence of life imprisonment was unconstitutionally disproportionate under Article I, section 16, of the Oregon Constitution. Specifically, the defendant argued that constitutional "disproportionality" protections were offended because (1) a person convicted of aggravated murder could, in some circumstances, be released on parole after 25 years, but (2) a person convicted of the lesser offense of murder under ORS 163.115 effectively received a "true life" sentence because there were no statutory provisions for releasing such persons after they had completed the 25-year mandatory minimum portion of the sentence, as prescribed in ORS 163.115(5)(b) (1997).[3] We agreed, concluding that "the proper sentence [for murder] is the 25-year mandatory minimum sentence required by ORS 137.700(a)(A) and ORS 163.115(5)(b), followed by post-prison supervision for life in accordance with OAR XXX-XXX-XXXX." Id. at 427, 974 P.2d 727.
Thereafter, the trial court in this case, consistently with our decision in McLain and, indeed, relying explicitly on McLain sentenced defendant to a 25-year mandatory minimum sentence followed by lifetime post-prison supervision. The state did not take issue in Davis II with that disposition.
In the wake of McLain, and after the imposition of the original sentence in this case, the 1999 legislature enacted amendments to ORS 163.115(5), now codified at ORS 163.115(5)(c) to (e), which granted the parole board authority to parole any person who had been convicted of murder and sentenced to "imprisonment for life," regardless of the date of the underlying crime. Or Laws 1999, ch. 782, § 2. Those amendments remedied the constitutional disproportionality defect identified in McLain.
Next, in State v. Haynes, 168 Or.App. 565, 7 P.3d 623, rev. den., 331 Or. 283, 18 P.3d 1101 (2000), we rejected the defendant's contention that retroactive application of the 1999 amendments to ORS 163.115(5) would violate the ex post facto provisions of the state and federal constitutions. There, the defendant had been convicted in 1997 of murder and sentenced to "imprisonment for life" with a mandatory minimum of 25 years, in accordance with ORS 163.115(5)(b). 168 Or. App. at 567, 7 P.3d 623. Thereafter, while the defendant's appeal was pending, we decided McLain. The defendant contended that, given McLain, his sentence was invalid and that the subsequent amendments to ORS 163.115(5) could not, constitutionally, be retroactively applied to correct that invalidity. Following Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), and our prior case law adopting its test, we held that the 1999 legislation presented no ex post facto violation:
"In this case, the statute in force at the time defendant committed the crime mandated an `imprisonment for life' sentence on a conviction of murder. Under the current statute, defendant faces the possibility of parole upon completion of the minimum term. Plainly the statute is ameliorative, and its application to defendant presents no ex post facto violation."
Haynes, 168 Or.App. at 568, 7 P.3d 623.
Thus, ifas in Haynesdefendant in this case had been sentenced before McLain to *1027 life imprisonment with a 25-year minimum and had appealed that sentence, and if we had decided that appeal after the effective date of the 1999 amendments, we would have sustained that sentence. Similarly, and consistently with Haynes, if the trial court in this case had imposed a sentence of life imprisonment with a 25-year minimum during the "window" period between our decision in McLain and the effective date of the 1999 amendments, and if we had decided defendant's appeal challenging that sentence after the effective date of the 1999 amendments, we would (again) have sustained that sentence, even though it was contrary to McLain.[4] Finally, and most obviously, if defendant had been originally sentenced after the effective date of the 1999 amendments, the only sentence that the trial court could lawfully have imposed was that prescribed by ORS 163.115(5), viz., life imprisonment with a 25-year minimum. Indeed, ORS 163.115(5) prescribed the imposition of that sentence as of the time of defendant's sentencing following retrial in 2004 and continues to do so today.
Neverthelessat least as the parties frame the disputethe question for purposes of Turner's applicability is whether a sentence consistent with McLain that was imposed during the McLain "window" (after we decided McLain and before the effective date of the 1999 amendment) was "erroneous."[5] For the reasons that follow, we do not determine that question. Rather, we conclude that, given the prudential considerations that inform Turner, even assuming that the original 1999 murder sentence was not erroneous, the trial court did not err on remand in imposing the sentence prescribed by the existing version of ORS 163.115(5)(b).
We turn to Turner. There, following his first trial, the defendant was convicted of assault with intent to rob, and the trial judge imposed a sentence of five years' imprisonment. Turner, 247 Or. at 302, 429 P.2d 565. On his first appeal, the defendant successfully raised a constitutional challenge to his conviction. Id. On remand, following a retrial before a different judge, the defendant was again convicted, and the court imposed a sentence of seven years' imprisonment with credit for the two years that the defendant had served. Id. Thus, the sentence imposed following the defendant's successful appeal was harsher than the originally imposed sentence.
On appeal from that disposition, the defendant contended that the trial court could not, on remand, "constitutionally impose a sentence" exceeding that originally imposed. Id. The Supreme Court remanded for resentencing, concluding:
"After an appeal or post-conviction proceeding has resulted in the ordering of a retrial for errors other than an erroneous sentence * * * and the defendant has again been convicted, no harsher sentence can be given than that initially imposed. If the initial sentence was incarceration, the defendant subsequently cannot be sentenced to any longer term than the time still to be served upon his initial sentence."
Id. at 313, 429 P.2d 565.
The foregoing quotation constitutes Turner's "rule." However, in understanding *1028 Turner's application here, the court's rationale underlying that result is equally important.
In reaching its conclusion, the Supreme Court began by considering a broad range of cases from various jurisdictions. The court first observed that the question of imposition of a harsher sentence after a successful appeal did not appear to present a double jeopardy or due process concern. Id. at 306-07, 429 P.2d 565.
The court then acknowledged that
"[a] numerical majority of the decisions from other jurisdictions supports the state's position in this case that upon resentencing the sentencing court can assess any sentence it believes appropriate within the maximum set by statute and the previous sentence is no limitation upon that authority."
Id. at 307, 429 P.2d 565. The court further noted, however, that some courts had advanced no supporting reason for such a conclusion; that other courts had based that conclusion on the ground that the original sentence was a "nullity," id. at 309, 429 P.2d 565; that still others had refused to "undermin[e] the traditional role of the trial judge" in imposing sentence by limiting the second judge's ability to rely on additional information that was unknown to the first sentencing judge, id.; and, finally, that some courts had reasoned that a defendant who chooses to have a retrial "takes a chance after conviction on the trial judge's discretion in sentencing him." Id. at 310, 429 P.2d 565.
The Supreme Court rejected those rationales, concluding with respect to impairment of judicial discretion on resentencing:
"Some of the courts have refused to limit the second sentencing court because the sentencing court traditionally is granted almost complete discretion, within the statutory limits, in determining the appropriate sentence. We do subscribe to the principle that the trial court should be given wide latitude in fixing the sentencing; however, in this class of case one trial court has already exercised its discretion and best judgment and imposed a sentence. Under ordinary circumstances there is no reason to conclude that the public interest is better served by the second sentence than the first."
Id. at 312-13, 429 P.2d 565. The court acknowledged that a bright-line rule precluding imposition of harsher sentences on resentencing would prevent a court from acting on new information warranting a more severe sentence. Nevertheless, the Supreme Court concurred in the assessment of the Advisory Committee on Sentencing and Review of the American Bar Association Project on Minimum Standards for Criminal Justice that "it is preferable to establish a standard that is prophylactic in effect, and easily administered, whereby sentencing judges are not given power to increase a sentence when an applicant has exercised his right to seek a post-conviction remedy [or appeal]." Id. at 314, 429 P.2d 565 (internal quotation marks and omitted).
After reaching its substantive conclusion about what the law should be, the court in Turner then turned to the question "of whether the rule proposed should be grounded upon the due process or double jeopardy provisions of the state or federal constitutions or whether it should be grounded upon the statutes or the common law." Id. at 315, 429 P.2d 565.[6] The court concluded that its preclusive approach was ultimately derived from the statute authorizing criminal appeals:
"[W]hen the state grants a criminal appeal as a matter of right to one convicted of a crime, as it has, our procedural policy should be not to limit that right by requiring the defendant to risk a more severe sentence in order to exercise that right of *1029 appeal. ORS 138.020."[7]
Id.
The foregoing conclusion was not based on any construction of the language of ORS 138.020 or the legislative history of that provision. Cf. PGE v. Bureau of Labor and Industries, 317 Or. 606, 610-11, 859 P.2d 1143 (1993). Instead, it was driven by prudential/policy considerationse.g., mitigating potential "chilling effects" pertaining to the statute's practical availability and operation. See Turner, 247 Or. at 315, 429 P.2d 565 (quoting with approval State v. Wolf, 46 N.J. 301, 308-09, 216 A.2d 586 (1966)) ("Our decision finds its base in procedural policies which are of the essence of the administration of criminal justice. * * * Consequently, we hold that since the State has granted the universal right of appeal, standards [of] procedural fairness forbid limiting the right by requiring the defendant to barter with his life for the opportunity of exercising it." (internal quotation marks omitted)). Thus, the principle announced in Turner is, at least by its own terms, ultimately "statutory" and not constitutional.
Given the foregoing understanding, we conclude that, in this case, the court's imposition following retrial of the sentence prescribed by the then-existing version of ORS 163.115(5)(a) and (b) did not violate Turner for three related reasons. First, Turner arose in a context of broad sentencing discretion, long antedating the sentencing guidelines, mandatory minimum sentences under ORS 137.700, and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Blakely, and their mutating progeny. Because of that discretion, a defendant convicted of even a single crime was subject to a range of judicially imposed lawful punishment. That range of judicial discretion, in turn, presented at least a hypothetical prospect of retaliation for a successful appeal. See, e.g., Turner, 247 Or. at 313, 429 P.2d 565 ("[I]t seems quite obvious that the possibility of a more severe sentence in the event of a successful appeal or post-conviction proceeding and a subsequent new trial and conviction would `chill' a defendant's desire to correct an erroneously conducted initial trial."). Turner was calculated to remedy that ambient "chilling effect" in an environment of pervasive judicial sentencing discretion.
Here, in contrast, neither the court that originally sentenced defendant in 1999 nor the one that sentenced him in 2004 was in a position to exercise any judicial discretion in determining his sentence for murder. The legislature dictated the proper sentences. In 1999, in accordance with our interpretation of the relevant statutes and constitutional provisions in McLain, the trial court imposed a 25-year mandatory minimum sentence followed by lifetime post-prison supervision. No judicial discretion was implicated. In 2004, in light of the retroactive statutory fix to ORS 163.115(5), the court was required to, and did, impose a sentence of imprisonment for life, with "a minimum of 25 years without possibility of parole." Again, no judicial discretion was exercised.
In sum, the difference in the sentences imposed here was not, as in Turner, the product of a choice among various lawful sentencing options. Rather, that difference was the product of a legislatively mandated, nondiscretionary change in the prescribed sentence, which did not violate ex post facto protections.[8]
Second, in 2004, Oregon statutes permitted a trial court to impose only one sentence for murderviz., a life sentence with a 25-year minimum, as prescribed in ORS 163.115(5). Thus, if the trial court, on remand in this case, had imposed a different sentence, it would have violated that statutory mandate. Nothing in any case applying Turner *1030 purports to compel a trial court not to impose a legislatively mandated sentence, as opposed to a sentence permitted within a range of discretion.
Third, as emphasized, the Turner doctrine purports to be grounded in statute. Thus, to the extent that there is any conflict between imposing the sentence prescribed under ORS 163.115(5)(b) and Turner's "gloss" on ORS 138.020, one must give wayby way of "repeal by implication" or otherwiseunless the two can somehow be "harmonized." Given our assessment of the considerations upon which Turner was predicated, we believe that the two can be harmonized, so that Turner does not purport to preclude a court, on resentencing, from imposing (again, consistently with constitutional ex post facto constraints) the only statutorily permitted sentence.
If, however, Turner's statutory "gloss" must be deemed to be in irreconcilable conflict with the application of ORS 163.115(5)(a) and (b) in this case, the latter must control. The legislature, obviously, is free to enact or amend statutes at will, within constitutional boundaries. When two statutes are in conflict, "the later will prevail." State v. Lawler, 144 Or.App. 456, 463, 927 P.2d 99 (1996), rev. den., 326 Or. 390, 952 P.2d 63 (1998) (citing cases). Given the legislature's clearly expressed intent regarding the sentence that defendant should receive for murder, and given that imposition of such a sentence would not be unconstitutional, see Haynes, 168 Or.App. at 565, 7 P.3d 623, the trial court properly imposed the legislatively mandated sentence.
We turn, finally, to defendant's third assignment of error, regarding the trial court's determination after remand that it "had no power or authority" to act on defendant's Blakely-based challenge to the upward departure sentence previously imposed on defendant's conviction for FIP. As noted, defendant did not raise any challenge to the upward departure sentence (or the underlying conviction) when it was imposed in 1999 or in the ensuing appeal in Davis II. Defendant argues, however, that, because the Oregon Supreme Court in Davis II had reversed the original judgment and remanded the case for further proceedings, the trial court reacquired jurisdiction over the entire case, including with respect to sentencing on the affirmed conviction. The state counters that the sentence on the FIP conviction was "beyond the scope" of the remand in Davis II and further that, even if the trial court had authority to resentence on that conviction, it was not required to do so.
The question before us, specifically, is whether the Supreme Court's disposition in Davis II functioned effectively as an affirmance of the sentence originally imposed on the FIP conviction, precluding any review or modification of that sentence on remand. The state suggests that, because the Supreme Court's disposition did not invoke or track any of the then-extant statutory language of ORS 138.222(5) (2003), amended by Oregon Laws 2005, chapter 563, section 1, the court's disposition merely reversed defendant's murder conviction, leaving the FIP conviction and sentence intact. ORS 138.222(5) (2003) provided, as pertinent here:
"If the appellate court determines that the sentencing court, in imposing a sentence in the case, committed an error that requires resentencing, the appellate court shall remand the entire case for resentencing. The sentencing court may impose a new sentence for any conviction in the remanded case."[9]
(Emphasis added.) In a related sense, the state emphasizes that the Supreme Court's opinion in Davis II did not mention defendant's conviction for FIP; rather, it referred only to the murder conviction, and its holding pertained only to the murder conviction. The court concluded:

*1031 "The error could have affected the jury's determination whether there was reasonable doubt that defendant murdered the victim, as the state claimed. Because we cannot conclude, in the terms of Article VII (Amended), section 3, that the judgment `was such as should have been rendered in this case,' we must reverse and remand for a new trial.
"The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings."
Davis II, 336 Or. at 34-35, 77 P.3d 1111 (emphasis added).
In criminal cases, appellate courts have authority to "reverse, affirm or modify the judgment" that has been appealed from. ORS 138.240. Moreover, ORS 138.222(5) (2003) indicated a legislative intent that, when an appellate court discerns certain errors in a case, the "entire case" should be remanded so that any conviction in the case may be resentenced.
In State v. Rodvelt, 187 Or.App. 128, 66 P.3d 577, rev. den., 336 Or. 17, 77 P.3d 320 (2003), we interpreted that language from ORS 138.222(5) (2003) to require a remand for resentencing on all convictions in a case when a reversible error affects any of the convictions in a case, because the reversal of one conviction can affect how the remaining convictions were, or should be, sentenced:
"Given the way that sentences are calculated under the felony sentencing guidelines, we conclude that, when some but not all convictions in a case are reversed, there necessarily has been an `error in imposing a sentence in the case,' and such an error `requires resentencing.' That is so because felony sentencing under the guidelines is complex, and the way that one conviction is sentenced affects how the remaining convictions are classified on the sentencing guidelines grid for purposes of determining what sentences may be imposed on those convictions."
Id. at 132, 66 P.3d 577. Thus, in Rodvelt, although only certain convictions were reversed and remanded for entry of a judgment merging those convictions while other convictions were affirmed, the entire case was remanded for resentencing. See also State v. Sanders, 189 Or.App. 107, 112, 74 P.3d 1105 (2003), rev. den., 336 Or. 657, 92 P.3d 122 (2004) ("[W]hen one conviction in a multiple-conviction case is reversed * * * ORS 138.222(5) * * * requires remand of the entire case.").[10]
Thus, under this court's case law, if we had been confronted with the type of error at issue in Davis II, we would have reversed and remanded the murder conviction and remanded the entire case for resentencing. The question is whether the Supreme Court's disposition in Davis II had that effector whether, as the state asserts, it operated, more restrictively, as an affirmance of the FIP sentence (as well as the underlying conviction) and a reversal of only the conviction and sentence on the murder count. Although it is true that the Supreme Court has never addressed our construction of ORS 138.222(5) (2003) in Rodvelt or related casesand, presumably, given the 2005 amendment to the statute, never willwe understand the scope of the Supreme Court's remand in Davis II to conform to the same construction. We note, particularly, that the Supreme Court in Davis II stated that the "judgment" was "reversed" (not affirmed in part or modified) and that the "case" was "remanded" to the circuit court. Further, as noted, see 216 Or.App. at 459, 174 P.3d 1023, the reasons that the trial court gave for imposing the upward departure sentence on the FIP conviction were inextricably interrelated with the circumstances of the murder conviction, which the Supreme Court reversed.
In sum, contrary to its understanding, the trial court did, and does, have the "authority" to entertain defendant's Blakely-based challenge to the imposition of the upward departure sentence on the FIP conviction. We leave for the trial court to address, in the *1032 first instance, various responses proffered by the state, including that defendant waived his present challenge.
Convictions affirmed; remanded for resentencing.
NOTES
[1] Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."
(Emphasis added.)
[2] As noted, the state never conceded that the acknowledged evidentiary error compelled reversal in Davis II; rather, the state contended that the exclusion of the disputed evidence, albeit erroneous, was harmless. See 216 Or.App. at 459, 174 P.3d 1023.
[3] We summarized our understanding of the defendant's argument and the practical operation of the statute as follows:

"Thus, under current law, the Board [of Parole and Post-Prison Supervision] has authority to parole offenders who are serving indeterminate sentences for pre-1989 crimes and to parole aggravated murderers; the Board lacks authority to parole any other offenders, such as murderers sentenced under ORS 163.115(5)(a) to `imprisonment for life.'
"Defendant is correct that his sentence of imprisonment for life under ORS 163.115(5)(a) is, in effect, a sentence of life imprisonment without the possibility of parole, because nobody has the authority to parole him."
McLain, 158 Or.App. at 425, 974 P.2d 727.
[4] That putative disposition is premised on the assumption that Haynes was correctly decided. Defendant, in passing, invites us to revisit Haynes, but we decline to do so.
[5] The parties' contending positions can be broadly summarized as follows: Defendant contends that, after McLain and before the effective date of the 1999 amendments, the only lawful sentence that could be imposed was the sentence prescribed by McLain, i.e., the sentence that the trial court originally imposed here. Thus, defendant contends that, to the extent that Turner does not preclude the imposition of a harsher sentence following retrial when the originally imposed sentence was "erroneous," Turner, 247 Or. at 313, 429 P.2d 565, that condition was not satisfied here.

Conversely, the state contends that if (as in the second hypothetical scenario set out above), the trial court had originally imposed the sentence that was ultimately imposed herea life sentence with a 25-year minimumthat sentence would have been sustained on appeal under Haynes's analysis. Given that putative result, the state posits that the ultimate imposition of sentence here did not violate Turner. However, the state does not explain how or why the enactment of the 1999 amendments to ORS 163.115(5) would render the sentence originally imposed here i.e., a sentence imposed in accordance with McLain before the effective date of those amendments"erroneous" for Turner purposes.
[6] The court had not yet explicitly stated that the Oregon Constitution does not contain a "due process" clause. See State v. Stroup, 290 Or. 185, 200, 620 P.2d 1359 (1980) ("Because the Oregon Constitution does not have a due process clause of its own, any pronouncement made by this court concerning due process * * * must rest upon the due process clause of the Constitution of the United States."). See also Hans Linde, Without Due Process: Unconstitutional Law in Oregon, 49 Or. L. Rev. 125 (1970).
[7] ORS 138.020 provides that "[e]ither the state or the defendant may as a matter of right appeal from a judgment in a criminal action in the cases prescribed in ORS 138.010 to 138.310, and not otherwise." That statute has remained substantially the same since Turner was decided.
[8] Of course, as a general matter, imposition on resentencing of a harsher sentence that is prescribed by subsequently enacted legislation will violate constitutional ex post facto protections. The circumstances here, again, fall within Dobbert's "ameliorative" legislation principle. Haynes, 168 Or.App. at 568, 7 P.3d 623.
[9] We noteand, indeed, emphasizethat, if the Davis II remand had occurred under the current version of ORS 138.222(5), the proper resolution would be patent. In 2005, see Oregon Laws 2005, chapter 563, section 1, the legislature added the following language that is now codified at ORS 138.222(5)(b):

"If the appellate court, in a case involving multiple counts of which at least one is a felony, reverses the judgment of conviction on any count and affirms other counts, the appellate court shall remand the case to the trial court for resentencing on the affirmed count or counts."
[10] ORS 138.222(5)(b), see 216 Or.App. at 472 n. 9, 174 P.3d 1030, essentially codifies Rodvelt's holding.