Argued and submitted November 25, 2015; affirmed on appeal and cross-appeal December 14, 2016; state's petition for review denied April 27 (361 Or 439), Ambill's petition for review denied June 1, 2017 (361 Or 524)

## STATE OF OREGON,
*Plaintiff-Respondent*
*Cross-Appellant,*

*v.*

## RONALD WAYNE AMBILL,
*Defendant-Appellant*
*Cross-Respondent.*

Coos County Circuit Court
12CR0830; A154252

385 P3d 1110

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With her on the cross-appeal answering brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General.

Before Ortega, Presiding Judge, and Hadlock, Chief Judge, and Lagesen, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**LAGESEN, J.**

Defendant was convicted of murder. In accordance with ORS 163.115(5)(a) and (b),[1] the trial court sentenced him to an indeterminate life sentence with a 25-year minimum term of confinement without eligibility for parole. Defendant appeals, and the state cross-appeals. Defendant seeks reversal of his conviction, contending that the trial court committed two evidentiary errors. The state seeks a remand to the trial court for resentencing, contending that the trial court erred when it concluded that it lacked authority to impose a minimum term of confinement in excess of the 25 years specified in ORS 163.115(5)(b). Specifically, the state contends that, under ORS 137.637[2] and the Supreme Court's decision in *State v. Morgan*, 316 Or 553, 856 P2d 612 (1993), the trial court was authorized to sentence defendant to a minimum term of incarceration in excess of the 25-year term specified in ORS 163.115(5)(b) if the sentencing guidelines provide for such a term. We conclude that the trial court did not err and, accordingly, affirm on appeal and cross-appeal. We reject defendant's assignments of error without written discussion and write only to address the state's cross-appeal argument, reviewing for legal error the trial court's determination that it did not have the authority to impose a minimum term of incarceration longer than 25 years. *See, e.g., State v. Wilson*, 243 Or App 464, 469, 259 P3d 1004 (2011) (reviewing trial court's application of sentencing statutes for legal error).

---

[1] ORS 163.115(5) provides, in pertinent part:

"(a) A person convicted of murder, who was at least 15 years of age at the time of committing the murder, shall be punished by imprisonment for life.

"(b) When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 25 years without possibility of parole, release to post-prison supervision, release on work release or any form of temporary leave or employment at a forest or work camp."

[2] ORS 137.637 provides:

"When a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the sentence as provided by the rules of the Oregon Criminal Justice Commission, whichever is longer."

## BACKGROUND

### A. *Legal Background*

To provide context for the state's claim of sentencing error, and our resolution of it, we briefly review the history of sentencing law in Oregon, with a focus on the law applicable to sentencing for murder.

From 1977 until 1989, Oregon had what was known as the "indeterminate" matrix sentencing scheme. Under that scheme, the sentence imposed by a sentencing court represented the maximum amount of time that the offender would be incarcerated, and the board of parole would determine how much time a given offender actually remained incarcerated. *See* ORS 137.120(1);[3] *Hamel v. Johnson*, 330 Or 180, 185-86, 998 P2d 661 (2000). As the rules of the Oregon Criminal Justice Commission explain, "[a]lthough many citizens believe the indeterminate sentence sets the length of imprisonment, that sentence only sets an offender's maximum period of incarceration and the matrix controls actual length of stay." OAR 213-002-0001(3)(b).

In 1989, the legislature replaced the indeterminate sentencing scheme with a determinate "guidelines" sentencing scheme. Under that scheme—which remains in effect today—the sentence imposed by the sentencing court is a determinate one that represents the actual amount of time that an offender will remain incarcerated, subject to certain reductions allowed by law. *See State ex rel Engweiler v. Cook*, 340 Or 373, 381, 133 P3d 904 (2006) (describing enactment of guidelines sentencing scheme); OAR 213-002-0001(3)(b) ("Sentences of imprisonment should represent the time an offender will actually serve, subject only to any reduction authorized by law."). The sentencing court generally must

---

[3] ORS 137.120(1) provides:

"Whenever any person is convicted of a felony committed prior to November 1, 1989, the court shall, unless it imposes other than a sentence to serve a term of imprisonment in the custody of the Department of Corrections, sentence such person to imprisonment for an indeterminate period of time, but stating and fixing in the judgment and sentence the maximum term for the crime, which shall not exceed the maximum term of imprisonment provided by law therefor; and judgment shall be given accordingly. Such a sentence shall be known as an indeterminate sentence. The court shall state on the record the reasons for the sentence imposed."

determine the length of a sentence by following the rules or "guidelines" promulgated by the Oregon Criminal Justice Commission and approved by the legislature. ORS 137.120(2); *Engweiler*, 340 Or at 381. In other words, when the guidelines scheme applies, the sentencing court, not the parole board, determines the amount of time that an offender will be incarcerated, providing greater certainty at the time the sentence is imposed as to how long that offender will be incarcerated and when the offender will be released. *See* OAR 213-002-0001(3)(b) ("The frequent disparity between the indeterminate sentence length and time served under the matrix confuses and angers the public and damages the corrections system's credibility with the public. Sentences of imprisonment should represent the time an offender will actually serve, subject only to any reduction authorized by law.").

ORS 163.115 defines the crime of murder and provides the sentence for it, and did so in 1989 at the time that the legislature replaced the indeterminate matrix sentencing scheme with the determinate guidelines sentencing scheme. Its relationship to the guidelines scheme has been litigated extensively, and has been altered by the legislature in the years following the adoption of the guidelines.

When the guidelines first went into effect in 1989, the sentence for murder was an indeterminate life sentence with a 10 to 25-year mandatory minimum term of incarceration:

"(a)   A person convicted of murder shall be punished by imprisonment for life.

"(b)   When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 10 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(c)   When a defendant is convicted of murder under this section, the court, in addition to the minimum required by paragraph (b) of this subsection, may order that the defendant shall be confined for a minimum term of up to an additional 15 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp."

ORS 163.115(3) (1989). In enacting the guidelines, the legislature did not explicitly repeal the indeterminate life sentence then specified in ORS 163.115(3)(a) (1989), or otherwise address expressly how an offender convicted for murder should be sentenced for that offense. As a result, it was not immediately clear how the legislature intended for murder sentences to operate and, in particular, whether the legislature intended to retain the indeterminate life sentence specified in ORS 163.115 (1989).

In *Morgan*, the Supreme Court resolved the issue. 316 Or 553. It concluded that the enactment of the guidelines had impliedly repealed the indeterminate life sentence of imprisonment contained in ORS 163.115 (1989). *Id.* at 615-16; *State v. Francis*, 154 Or App 486, 489, 962 P2d 45, *rev den*, 327 Or 554 (1998) (describing holding in *Morgan*). In view of its conclusion that the indeterminate life sentence for murder had been impliedly repealed, the court further concluded that the appropriate sentence of murder was a determinate term of incarceration, to be followed by post-prison supervision for life, unless the board of parole shortened the term of post-prison supervision. *Morgan*, 316 Or at 560. The court noted that ORS 137.637 stated: "When a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the presumptive sentence as provided by the" guidelines. *Id.* at 556-57. It then concluded that the mandatory minimum terms of incarceration then specified in ORS 163.115(3)(b) and (c) (1989) constituted "determinate" sentences for purposes of ORS 137.637. *Id.* at 557. It concluded further that a court sentencing an offender for murder should determine the term of incarceration by comparing the length of the term required under the guidelines with the length of the minimum term of confinement that the court otherwise would impose under 163.115(3)(b) and (c) (1989), and then impose whatever term was longer. *Id.* at 557-58.

The legislature later changed the sentence for murder. In 1995, it amended ORS 163.115 (1989), including the section providing for an indeterminate life sentence. Or Laws 1995, ch 421, § 3. As amended, ORS 163.115(5) (1995)

stated that the sentence for murder—provided the offender was of a certain age—was an indeterminate life sentence with a 25-year minimum term of confinement:

> "(a)   A person convicted of murder, who was at least 15 years of age at the time of committing the murder, shall be punished by imprisonment for life.
>
> "(b)   When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 25 years without possibility of parole ***."

In *Francis*, we addressed the legal effect of those amendments, concluding that they had "the effect of reviving and reenacting" the indeterminate life sentence of imprisonment for murder. 154 Or App at 491. As a result, the proper sentence for murder was no longer the one identified in *Morgan*. Instead, under ORS 163.115 (1995), the correct sentence for murder was an indeterminate life sentence of imprisonment with a mandatory minimum term of incarceration of 25 years. *Id.*

Except for a brief period of time in 1999, that sentence has continued to be the sentence today. In 1999, we held the sentence to be unconstitutional in *State v. McLain*, 158 Or App 419, 427, 974 P2d 727 (1999) (en banc). There, we noted that when the legislature amended the statute to provide for the indeterminate life sentence for murder with a 25-year minimum, it had failed to provide authority to the board of parole to consider an offender for parole after the completion of the 25-year minimum. *Id.* at 425. We concluded that the omission of any parole authority rendered the sentence for murder unconstitutionally disproportionate with the sentence for aggravated murder, in violation of Article I, section 16 of the Oregon Constitution. That was because, as a consequence of the omission of any parole authority, offenders convicted of murder received a true life sentence, whereas, at the time, certain offenders convicted of the more serious offense of aggravated murder could be paroled after serving a minimum of 25 years' incarceration. *Id.* at 425-27. We concluded further that the indeterminate life sentence required by ORS 163.115 (1995) was facially unconstitutional and that, as a result, the proper sentence

for murder was a 25-year determinate term of incarceration, to be followed by lifetime post-prison supervision. *Id.* at 427.

The legislature acted promptly to correct the deficiency identified in *McLain*. Or Laws 1999, ch 782, § 2; *State v. Davis*, 216 Or App 456, 464, 174 P3d 1022 (2007), *rev den*, 334 Or 401 (2008) (describing the legislature's response to our decision in *McLain*). As amended—and as applicable to defendant—the statute continues to provide that the sentence for murder is an indeterminate life sentence, and directs that the sentencing court "shall order that the defendant shall be confined for a minimum of 25 years without possibility of parole" or any other form of release. ORS 163.115(5)(b). The statute also provides that an offender sentenced for murder may be considered for parole eligibility at any time after the completion of the 25-year mandatory minimum term of confinement specified in ORS 163.115(5)(b), and that, after that date, the board of parole may set a release date for the offender if it finds that the offender meets the requirements to be considered for parole:

> "(c)  At any time after completion of a minimum period of confinement pursuant to paragraph (b) of this subsection, the State Board of Parole and Post-Prison Supervision, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue is whether the prisoner is likely to be rehabilitated within a reasonable period of time.
>
> "* * * * *
>
> "(d)  If, upon hearing all of the evidence, the board * * * finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, release to post-prison supervision or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole, release to post-prison supervision or work release and may set a release date. Otherwise, the board shall deny the relief sought in the petition."

ORS 163.115(5); *see also* Or Laws 1999, ch 782, § 4. At the same time that it amended ORS 163.115, the legislature

also amended ORS 163.105, which governs the crime of aggravated murder, to increase the minimum amount of time an eligible offender convicted of aggravated murder must serve before being considered for parole from 25 years to 30 years. Or Laws 1999, ch 782, § 5. Thus, as a result of the 1999 amendments to ORS 163.115 and ORS 163.105, offenders convicted of murder must serve a minimum of 25 years before there is any possibility of parole, and offenders convicted of aggravated murder who are not sentenced to death or to a "true" life sentence without possibility of parole must serve a minimum of 30 years before there is any possibility of parole.

## B. *Factual Background*

In this case, the state sought to have the trial court sentence defendant to a mandatory minimum term of incarceration in excess of the 25 years specified in ORS 163.115(5)(b). To that end, the state pleaded several sentencing enhancement factors and proved them to the jury. The state then argued to the trial court that it should sentence defendant to the indeterminate life sentence required by ORS 163.115(5)(a) but, instead of the 25-year minimum required by ORS 163.115(5)(b), the court should sentence defendant to a minimum term of incarceration of 538 months, nearly 45 years. The state pointed out that, if computed under the guidelines, defendant's determinate sentence for murder could be as long as 538 months, if the court upwardly departed based on the sentencing enhancement factors found by the jury. Relying on ORS 137.637, the state argued that the court was required to impose the guidelines sentence for murder as defendant's minimum term of confinement before being eligible for parole, if the trial court determined that that sentence under the guidelines exceeded 25 years.

The trial court rejected that argument. It concluded that ORS 163.115 controls the imposition of a sentence for murder and that, in that statute, "the legislature has said what should happen when a judge sentences individuals following a murder conviction," and that the guidelines did not supply a mechanism for sentencing defendant to a minimum term of incarceration in excess of 25 years.

ANALYSIS

Before us, the state reiterates the argument that it presented to the trial court. The state observes that, in *Morgan*, the Supreme Court characterized the then-applicable minimum terms of confinement specified in ORS 163.115 as determinate sentences for purposes of ORS 137.637. The state then points out that ORS 137.637 provides that, "[w]hen a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the sentence as provided by the rules of the Oregon Criminal Justice Commission, whichever is longer," and argues that that directive authorized the trial court to determine defendant's term of incarceration under the guidelines, compare that term of incarceration with the mandatory minimum provided in ORS 163.115, and then impose whichever term was longer.

The state's reading of ORS 137.637 is not an implausible one, in view of the Supreme Court's holding in *Morgan*. However, our consideration of the text, context, and history of the pertinent provisions of ORS 163.115—in particular, the legislative alterations to that statute after *Morgan* and *McLain*—persuade us that the legislature intended that ORS 163.115(5)(b) would supply the applicable minimum term of incarceration for an offender sentenced to an indeterminate life sentence for murder, and that the legislature did not intend for that minimum term to be computed under the guidelines. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (setting forth methodology for statutory construction); *Young v. State of Oregon*, 161 Or App 32, 35-36, 983 P2d 1044, *rev den*, 329 Or 447 (1999) (explaining that context of statute includes prior enactment, prior judicial interpretations, and historical context).

First, the text of ORS 163.115(5)(c) signals the legislature's intention that the applicable minimum term of confinement for an offender sentenced for murder be the 25-year term specified in ORS 163.115(5)(b). In explaining the parole process for such offenders, ORS 163.115(5)(c) provides that an offender may petition the board to determine whether the offender is eligible for parole "[a]t any time after completion of *a minimum period of confinement pursuant to*

*paragraph (b)* of this subsection." ORS 163.115(5)(c) (emphasis added). The emphasized wording indicates that the legislature contemplated that such offenders would, in fact, be serving the 25-year minimum term of confinement imposed under ORS 163.115(5)(b), and not a different term of confinement imposed under the guidelines. If the legislature had contemplated that the guidelines (or some other source of law) would supply an alternative minimum term of confinement for an offender serving an indeterminate life sentence for murder, it would not have referred specifically to "a minimum period of confinement pursuant to paragraph (b)," but, instead, would have referred more generally to any minimum term of confinement imposed by the trial court, regardless of the source of authority for it.

Second, context and legislative history further confirm the legislature's intention that ORS 163.115(5)(b) supply the minimum term of incarceration for offenders sentenced to an indeterminate life sentence for murder. As noted, in 1999, the legislature amended the murder and aggravated murder statutes to solve a very specific problem: the constitutional deficiency identified in *McLain*. *Davis*, 216 Or App at 464; *see* Exhibit R, House Judiciary Criminal Law Committee, HB 3586, Apr 23, 1999 (memorandum of Rep Lane Shetterly attaching the *McLain* decision and explaining the need for proposed amendments to sentencing scheme). That is, the legislature sought to ensure that the sentence for murder was not disproportionate to the sentence for aggravated murder in the manner identified by *McLain*. It did so by devising a parole process for offenders sentenced for murder that was not less favorable than the parole process for offenders sentenced for aggravated murder. Specifically, the legislature, among other things, (1) provided a process by which an offender could be considered for parole after completing the 25-year term of incarceration required by ORS 163.115(5)(b); and (2) amended the aggravated murder statute, ORS 163.105, to require eligible offenders sentenced for aggravated murder to serve a 30-year minimum term of incarceration before such offenders could be considered for parole, thereby eliminating the possibility that an offender sentenced for the more serious offense of aggravated murder would have the opportunity to

be considered for parole at an earlier time than an offender sentenced for murder. Or Laws 1999, ch 782, § 5.

Implicit in the legislature's intention that the 1999 amendments solve the constitutional problem identified in *McLain* is a legislative determination that sentencing courts would be required to sentence an offender convicted of murder to a minimum term of incarceration pursuant to ORS 163.115(5)(b), and not pursuant to the guidelines or a different source of law. Otherwise, the 1999 amendments would not solve—at least not fully—the problem identified by *McLain*. The legislature did not provide for a parole process for offenders sentenced to a minimum term of incarceration pursuant to the guidelines, which would mean that, with respect to any such offenders, the *McLain* disproportionality problem would remain—such offenders would have no avenue to obtain parole under the reasoning of *McLain*.[4] Given the choice between a construction of ORS 163.115 that would accomplish the legislative objective of solving the *McLain* problem, and one that would not, we infer that the legislature intended the construction that solved the problem.

In addition, in view of *McLain*, the legislature was aware of the need to avoid treating offenders convicted of aggravated murder more favorably under the sentencing scheme than those convicted of murder. In particular, the legislature's amendment to the aggravated murder statute requiring an offender to complete a 30-year minimum term of incarceration without parole indicates that it intended to establish a scheme in which those convicted of aggravated murder would have to wait longer for parole consideration than those convicted of murder. That, too, favors the conclusion that the legislature intended that sentencing courts would impose the minimum term specified in ORS 163.115(5)(b), and would not impose a minimum under the guidelines or

---

[4] The state, which acknowledges that ORS 163.115(5)(c), by its terms, refers only to the minimum term of incarceration identified in ORS 163.115(5)(b), suggests that such a result could be avoided by construing ORS 163.115(5)(c) to authorize parole consideration for offender's sentences under the guidelines as well. Although that would solve the problem, the text and context of the provision, which omit any reference to the guidelines, indicate that that is not the solution selected by the legislature.

other source of law. If a sentencing court were authorized to impose a minimum term of confinement greater than the 25-year term in ORS 163.115(5)(b), the risk that those convicted of aggravated murder would be more favorably treated than those convicted of murder would remain. Again, in the light of the legislature's express objective to solve the particular problem identified by *McLain*, we decline to construe the statute so as to render that solution incomplete in the absence of any other textual or contextual indicators compelling such a conclusion.

For the foregoing reasons, we are persuaded from the text, context, and legislative history of ORS 163.115 that the legislature intended an offender convicted of murder to be sentenced to an indeterminate life sentence with the 25-year minimum term of incarceration specified in ORS 163.115(5)(b), and that the legislature did not intend for a sentencing court to impose a different minimum term of incarceration under the guidelines or any other source of law. We therefore affirm the judgment of the trial court.

Affirmed on appeal and cross-appeal.