Submitted March 6, 2019, affirmed August 19, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LARRY NOBLES,
aka Henry Jackson,
*Defendant-Appellant.*

### Multnomah County Circuit Court
930936079; A165834

473 P3d 1108

Defendant appeals from a judgment that resentenced him for a murder he committed in August 1993. Defendant argues that the trial court erred in imposing lifetime post-prison supervision (PPS), instead of the three years of PPS provided under the guidelines. *Held*: The Oregon Supreme Court has construed the sentencing law applicable to defendant's conviction for the 1993 murder to require the imposition of lifetime PPS, which is binding here.

Affirmed.

Julie E. Frantz, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Kistler, Senior Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Challenging his sentence for a murder committed in August 1993, defendant assigns error to the trial court's imposition of lifetime post-prison supervision (PPS). We review the application of sentencing law for legal error. *State v. Ambill*, 282 Or App 821, 823, 385 P3d 1110 (2016), *rev den*, 361 Or 524 (2017). Because the Oregon Supreme Court has construed the sentencing law applicable at the time of this murder to require the imposition of lifetime PPS, and we are bound by that conclusion, we affirm.

This case has been before us before, and we take most of the relevant facts, which are procedural and undisputed, from our prior decision:

"In 1994, defendant pleaded no contest to a murder charge and was sentenced to 144 months in prison followed by a life term of [PPS]. Defendant moved the trial court to reduce the PPS term to three years; the court granted that motion and entered an amended judgment so providing. Two days later, the trial court, acting *sua sponte* and with no notice to either party, issued another amended judgment [the second amended judgment], reversing its decision to reduce defendant's PPS term to three years and reinstating the lifetime PPS term of the original judgment."

*State v. Nobles*, 264 Or App 580, 581, 333 P3d 1077 (2014) (footnote omitted).

Appealing from that second amended judgment, defendant assigned error to the trial court's failure to provide him with proper notice before reinstating the lifetime PPS term. *Id.* He also contended that, "as a matter of state sentencing law, three years was the appropriate term of PPS for his conviction." *Id.* We vacated the second amended judgment and remanded based on the first issue regarding the notice requirement and did not reach the second issue regarding the proper PPS term for defendant's murder conviction. *Id.* at 582.

The issue regarding the proper PPS term is now before us, because, on remand, the trial court again imposed a lifetime PPS term. In a third amended judgment,[1] the

---

[1] The judgment was titled "Resentencing Amended Judgment of Conviction and Sentence *(PPS Only)*." For ease of reference, we refer to it as the third amended judgment.

court recited that defendant's conviction fell within grid block 11-C of the Oregon Felony Sentencing Guidelines and that his term of imprisonment was a downward durational departure sentence of 144 months—determinations that the original sentencing court had made and that remained unchanged and were not under reconsideration. As for defendant's term of PPS, the trial court ordered that it be for "**LIFE, unless the Board of Parole and Post-Prison Supervision [(BPPPS)] finds a shorter term appropriate. [PPS] term shall not be less than a period of 3 years**." (Boldface and underscoring in original.) The court imposed that term in reliance on *State v. Morgan*, 316 Or 553, 856 P2d 612 (1993).

On appeal, defendant contends that *Morgan* is inapposite, because the defendant in that case had received an indeterminate life sentence under ORS 163.115(3)(a) (1989), which compelled the imposition of a life term of PPS. By contrast here, defendant argues, he received a determinate sentence of imprisonment under the sentencing guidelines and, pursuant to *former* OAR 253-05-002(2)(c) (1989), the PPS term corresponding to his Crime Category 11 offense was three years.[2] The state counters that *Morgan* squarely controls the present case and requires the imposition of lifetime PPS.

Because defendant's murder conviction is subject to the sentencing law in effect when he committed the offense in August 1993, we begin by setting out the pertinent statute. ORS 163.115 defines the crime of, and provides the sentence for murder, and the version of that statute applicable to defendant's conviction states:

---

[2] *Former* OAR 253-05-002 (1989) provides:

"(1) A term of community supervision shall be imposed as part of the sentence of any offender who is sentenced to prison as provided by these rules or as a departure. This term of community supervision shall be described as post-prison supervision.

"(2) The duration of post-prison supervision shall be determined by the crime seriousness category of the most serious current crime of conviction:

"(a) one year for Crime Categories 1-3;

"(b) two years for Crime Categories 4-6; and

"(c) three years for Crime Categories 7-11."

"(3)(a)   *A person convicted of murder shall be punished by imprisonment for life.*

"(b)   When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 10 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(c)   When a defendant is convicted of murder under this section, the court, in addition to the minimum required by paragraph (b) of this subsection, may order that the defendant shall be confined for a minimum term of up to an additional 15 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp."

ORS 163.115(3) (1989) (emphasis added). Thus, the statute provided that the sentence for murder was an "indeterminate" life sentence—which represented the maximum possible term of incarceration, subject to the board of parole's determination, based on a matrix system, of how long a given offender's actual term of incarceration would be—with a 10- to 25-year mandatory minimum term of incarceration.

In 1989, however, the Oregon legislature had enacted "determinate" sentencing guidelines, under which the sentence imposed by the sentencing court represents "the time an offender will actually serve, subject only to any reduction authorized by law." OAR 213-002-0001(3)(b); *see also State ex rel Engweiler v. Cook*, 340 Or 373, 381, 133 P3d 904 (2006) (describing enactment of guidelines sentencing scheme). "In enacting the guidelines, the legislature did not explicitly repeal the indeterminate life sentence then specified in ORS 163.115(3)(a) (1989), or otherwise address expressly how an offender convicted for murder should be sentenced for that offense." *Ambill*, 282 Or App at 826. Ostensibly, then, there existed a tension between the former indeterminate matrix scheme and the latter determinate guidelines scheme as pertains to murder sentences.

In *Morgan*, the Oregon Supreme Court addressed the notion of any tension, concluding that "[n]either the Criminal Justice Council nor the legislature saw any inconsistency between the guidelines and ORS 163.115(3). Nor do

we." 316 Or at 558. The court held that the legislature's enactment of the sentencing guidelines had impliedly repealed the indeterminate sentence of lifetime imprisonment set out in ORS 163.115(3)(a) (1989). *Id.* at 559-60. If "imprisonment for life" pursuant to ORS 163.115(3)(a) may be imposed at all under the guidelines, the court suggested without deciding, it would have to be as an upward departure sentence. *Id.* at 559. That conclusion contradicts defendant's contention here that *Morgan* is distinguishable for the reason that the *Morgan* defendant had received an indeterminate life sentence; in fact, according to *Morgan*, no such sentence had been available.

Furthermore, the court recognized the "likely legislative intention" expressed by *former* OAR 253-05-004(1) (1989), which provides:

> "The term of post-prison supervision for an offender serving a life sentence pursuant to ORS 163.105 or ORS 163.115 shall be for the remainder of the offender's life, unless the Board finds a shorter term appropriate. In no case shall the term of supervision be less than three years."

The court understood that rule to express "[t]he likely legislative intention *** that the period of [PPS] for persons convicted of murder remains as before, with the exception that the [BPPPS] could, if it finds a shorter term of [PPS] appropriate, shorten the term of supervision to not less than three years." *Id.* at 560 (internal quotation marks omitted). Consequently, the court remanded the case for entry of a corrected judgment providing for the fixed terms specified in ORS 163.115(3)(b) and (c), "but delet[ing] the sentence of imprisonment for life and *provid[ing] for post-prison supervision for the remainder of the defendant's life, unless the Board of Parole and Post-Prison Supervision finds a shorter term appropriate.*" *Id.* (emphasis added).

Defendant maintains that *Morgan* does not control the outcome of this case, because the *Morgan* defendant was sentenced under ORS 163.115(3)(a) (1989), whereas defendant here was sentenced pursuant to the sentencing guidelines. But under Oregon case law, that is a distinction without a difference. On the same day that the Oregon Supreme Court issued *Morgan*, the court issued its companion case:

*State v. Bellek*, 316 Or 654, 856 P2d 616 (1993). For his murder conviction, the defendant in *Bellek* had received a sentence of life imprisonment with a 121-month minimum that was the presumptive sentence corresponding to his guidelines grid block. *State v. Bellek*, 114 Or App 17, 20-21, 834 P2d 458, *adh'd to as modified on recons*, 117 Or App 537, 844 P2d 937 (1992), *aff'd*, 316 Or 654, 856 P2d 616 (1993). Despite the ostensible change in the sentencing authority (from ORS 163.115 to the guidelines), the court resolved *Bellek* in the same manner as it did *Morgan*: "For the reasons stated in [*Morgan*]," it remanded the case to the trial court with directions to "delete the sentence of 'imprisonment for life' and impose, instead, a judgment that provides for [*PPS*] '*for the remainder of the [defendant's] life*, unless the Board finds a shorter term appropriate.'" *Bellek*, 316 Or at 656 (quoting OAR 253-05-004(1) (1989) (second brackets in *Bellek*; emphasis added)).

The identical dispositions in *Morgan* and *Bellek* undercut defendant's argument that the proper PPS term is contingent on the sentencing scheme relied on by the sentencing court. Rather, based on those two decisions, we understand the Oregon Supreme Court to construe the pertinent sentencing law to predicate the imposition of lifetime PPS on the *murder conviction*. *See Morgan*, 316 Or at 560 ("The likely legislative intention [was] that the period of [PPS] for persons *convicted of murder* remains as before, * * *." (Emphasis added.)). As we have previously described, the *Morgan* court had concluded:

> "[A] court sentencing an offender for murder should *determine the term of incarceration* by comparing the length of the term required under the guidelines with the length of the minimum term of confinement that the court otherwise would impose under [ORS] 163.115(3)(b) and (c) (1989), and then impose whatever term was longer."

*Ambill*, 282 Or App at 826 (emphasis added). In other words, according to *Morgan*, the significance of sentencing under ORS 163.115 (1989) versus sentencing under the guidelines only extends to the length of the term of incarceration, and not to the length of the term of PPS. Because *Morgan* held that, under *former* OAR 253-05-004(1) (1989), the length of

the PPS term for a murder conviction is for life, we must adhere to that conclusion here.

Defendant also posits that the *Morgan* court remanded to the trial court for the imposition of lifetime PPS as a matter of circumstance rather than as a matter of law. In defendant's view, the *Morgan* court remanded the case with specific orders for the imposition of lifetime PPS only because the trial court had *intended* to impose a life sentence. In light of that intent, he argues, the court fashioned a remedy that would allow for the intended "life sentence" result—by imposing the determinate components of ORS 163.115(3)(b) and (c) (1989) and a life term of PPS. Defendant distinguishes that, in this case, the trial court never attempted to impose a "life sentence."

Although *Morgan* and a number of cases relying on it to remand a murder sentence for the imposition of lifetime PPS indeed involved the initial imposition of a "life sentence,"[3] we disagree that the *Morgan* court had not imposed the lifetime PPS term as a matter of law. In *Morgan*, the court discerned from *former* OAR 253-05-004(1) (1989) that the legislative intent, in enacting the guidelines, was that "the period of [PPS] for persons convicted of murder *remains as before*," subject to an exception. 316 Or at 560 (emphasis added). That statement is somewhat confusing, however, because the concept of "post-prison supervision" did not exist before enactment of the guidelines; therefore, how can it "remain[] as before"? The prelude to the court's statement regarding the legislative intent offers some insight. The court prefaced its observation of the legislative intent by quoting with implicit approval the following argument by the state:

> "'Formerly, it is true, the life sentence mandated by ORS 163.115(3) was an indeterminate sentence that authorized the defendant's continued incarceration for the remainder of his life ***. Under the guidelines scheme, the 'life sentence' for murderers no longer operates *** to require

---

[3] *See, e.g.*, *Bellek*, 316 Or at 656; *State v. Cannon*, 135 Or App 561, 900 P2d 529 (1995); *State v. Zelinka*, 130 Or App 464, 882 P2d 624 (1994), *rev den*, 320 Or 508 (1995); *State v. Hostetter*, 125 Or App 491, 865 P2d 485 (1993), *rev den*, 318 Or 583 (1994); *State v. Stewart*, 123 Or App 432, 859 P2d 1200, *rev den*, 318 Or 246 (1993).

> continued incarceration beyond the minimum/determinate term imposed; *it requires only that the defendant shall remain within the jurisdiction of the department for the remainder of his life* once he is released on post-prison supervision after having served the minimum sentence imposed.'"

*Id*. at 559 (emphasis added). In essence, the state had argued that, before and after enactment of the guidelines, a defendant convicted of murder was subject to some form of lifetime supervision by the state—either while serving an indeterminate life sentence (pre-guidelines) or a determinate prison term followed by a lifetime PPS term (post-guidelines). Because the *Morgan* court quoted the state's argument with implicit approval, we understand it to conclude that a person convicted of murder under ORS 163.115 (1989) and after enactment of the guidelines was subject to lifetime PPS as a matter of law.

Given *Morgan*'s construction of the applicable sentencing law, as discussed above, and that decision's binding authority, we conclude that the trial court did not err in imposing a lifetime PPS term on defendant's murder conviction, even though it imposed defendant's prison term under the sentencing guidelines and did not impose a "life sentence."

Affirmed.